583 So.2d 829 (1991)
Kim ANDERSON
v.
NEW ORLEANS PUBLIC SERVICE, INC. and Gerald Joseph.
No. 91-C-0179.
Supreme Court of Louisiana.
June 28, 1991.
*830 Robert J. Caluda, Betsy J. Barnes, for plaintiff-applicant.
James Maher, III, for defendants-respondents.
HALL, Justice.
This suit resulted from the death of Dennis Anderson, a three-year-old boy who was hit by a New Orleans Public Service (NOPSI) truck. Dennis's mother, Kim Anderson, filed a wrongful death action against NOPSI and its employee, Gerald Joseph, the driver of the truck. After a jury award of $325,000 to the plaintiff and an assessment of 90% fault to NOPSI, the trial judge granted defendants' motion for a judgment notwithstanding the verdict (JNOV). The judge increased the percentage of fault attributed to plaintiff from 10% to 50% and reduced the jury general damage award from $325,000 to $150,000. The court of appeal affirmed, with one judge concurring. Anderson v. New Orleans Public Service, Inc., 572 So.2d 775 (La.App. 4th Cir.1990). Having granted plaintiff's writ application, 576 So.2d 21 (La.1991), we now reverse in part and affirm in part.

FACTS
On July 30, 1987, plaintiff, Kim Anderson, and her son, Dennis Anderson, were staying with Ms. Anderson's aunt, Gail Bailey, in the Calliope project in New Orleans. Dennis and Ms. Bailey's two children, 10-year-old Otis and eight-year-old Shantel Bailey, went swimming along with another of Dennis's cousins, nine-year-old Cornell Webb. The four children began walking back home after the pool closed at approximately 2:00 p.m. There were other children in the area who presumably had also just left the pool. The children had to cross South Dorgenois Street to get to the Calliope project from the pool. Cornell and Otis crossed the street, while Shantel and Dennis were picking berries from a vine on a fence near the street. Shantel, who had been holding Dennis's hand, let go of his hand and crossed the street at the same place Cornell and Otis had crossed. Dennis then went into the street and was hit and killed by the NOPSI truck that had just turned onto South Dorgenois from Clio Street.
*831 There was conflicting eyewitness testimony concerning the speed of the truck and exactly which part of the truck hit Dennis. There was also conflicting testimony concerning whether or not Ms. Anderson gave Dennis permission to go to the swimming pool. She testified that she began to feel drowsy because of medication she had taken to alleviate menstrual pains. She asked Ms. Bailey to watch the children while she took a nap. Ms. Bailey was not made a party to this suit and was not called to testify at trial. Moses Pettis, the investigating officer, testified that he interviewed the three children who were with Dennis on the day of the accident. According to the officer, Cornell and Otis stated that Ms. Anderson gave Dennis permission to go swimming with them. However, at trial, both boys denied talking to the police about the accident, and Cornell testified that they did not tell either Ms. Anderson or Ms. Bailey that they were going.
After a trial on the merits, the jury awarded Ms. Anderson $325,000 and assessed her with 10% fault. NOPSI was found to be 90% at fault. The trial judge granted defendants' motion for JNOV. The judge increased the percentage of fault attributable to Ms. Anderson to 50% and reduced the general damage award to $150,000. In his reasons for judgment, the judge indicated that the negligence of Ms. Bailey must be imputed to Ms. Anderson since Ms. Bailey was the agent of Ms. Anderson. The trial judge also stated that "the court would quarrel with the present jurisprudential `value' of a child's life; the more appropriate value is $250,000 rather than the $150,000 the court has fixed because it feels constrained to do so by the jurisprudence." We granted plaintiff's writ application to review the propriety of the JNOV as to the apportionment of fault and the reduction of the damages award.

JNOV
The article controlling the use of JNOV is LSA-C.C.P. Art. 1811.[1] The article *832 does not specify the grounds on which a trial judge may grant a JNOV. In Scott v. Hospital Service District No. 1, 496 So.2d 270 (La.1986), we set forth the criteria to be used in determining when a JNOV is proper. A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. Scott, supra. In making this determination, the court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.
In reviewing a JNOV, the appellate court must first determine if the trial court erred in granting the JNOV. This is done by using the aforementioned criteria just as the trial judge does in deciding whether to grant the motion or not, i.e. do the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict? If the answer to that question is in the affirmative, then the trial judge was correct in granting the motion. If, however, reasonable men in the exercise of impartial judgment might reach a different conclusion, then it was error to grant the motion and the jury verdict should be reinstated.

APPORTIONMENT OF FAULT
In assessing this case using the criteria set forth above, we hold that it was error to grant the defendants' motion for JNOV as to the apportionment of fault. The evidence presented to the jury was of such a conflicting nature that it is impossible to say that reasonable men could not reach different conclusions. The jury could have believed that Ms. Anderson asked Ms. Bailey to watch Dennis and that she did not give Dennis permission to go with the other children.
The trial judge stated that the negligence of Ms. Bailey as Ms. Anderson's agent must be imputed to Ms. Anderson. The court of appeal agreed with the trial court's assessment of 50% fault to the plaintiff for her negligence or "the negligence imputed to her through Gail Bailey." However, as this court stated in Blanchard v. Ogima, 215 So.2d 902, 906 (La.1968): "A master or employer is liable for the tortious conduct of a servant or employee which is within the scope of authority or employment, but a principal is not liable for the physical torts of a nonservant agent." Thus, only when the relationship of the parties is such that the principal has the power to control physical details of the actor as to the manner of his performance which is characteristic of the relation of master and servant does the principal become subject to liability for the physical tortious conduct of the actor. Liability for the negligent and tortious acts of another does not flow simply because of principal-agent or principal-mandatory relationship. Rowell v. Carter Mobile Homes, Inc., 500 So.2d 748 (La.1987).
Ms. Anderson had no power to control the actions of Ms. Bailey or the manner in which Ms. Bailey carried out the request that she watch Dennis. Therefore, there was no master-servant relationship between them, and it was erroneous for the trial judge to impute Ms. Bailey's negligence to Ms. Anderson. On the evidence presented, reasonable jurors could have concluded that Ms. Anderson's negligence, if any, was relatively slight.
Because we have concluded that the trial judge erred in granting the JNOV on the issue of apportionment of fault, the jury's apportionment of 10% fault to the plaintiff is reinstated. Ms. Bailey was not made a party to this suit, and the percentage of fault attributable to her, if any, is not argued by the parties. The jury found NOPSI, through its servant/employee, Gerald *833 Joseph, who was acting in the course and scope of his employment, to be 90% at fault in this accident. This accident occurred prior to the 1987 revision of LSA-C.C. Art. 2324, which deals with the liability of solidary obligors. Art. 2324, at the time of this accident, provided:
"He who causes another person to do an unlawful act, or assists or encourages in the commission of it, is answerable, in solido, with that person, for the damage caused by such act.
"Persons whose concurring fault has caused injury, death or loss to another are also answerable, in solido; provided, however, when the amount of recovery has been reduced in accordance with the preceding article, a judgment debtor shall not be liable for more than the degree of his fault to a judgment creditor to whom a greater degree of negligence has been attributed, reserving to all parties their respective rights of indemnity and contribution."
Therefore, if any negligence on Ms. Bailey's part was a cause of the accident, then NOPSI is liable in solido with her, and as a result, is answerable for all of the damages caused by the in solido tortfeasors to the plaintiff, provided that plaintiff is not attributed with a greater degree of fault than is NOPSI. Additionally, plaintiff's recovery is reduced by the percentage of fault attributable to her. LSA-C.C. Art. 2323.[2] The jury found that the percentage of fault attributable to NOPSI was 90%. NOPSI was clearly at fault to a degree greater than the 10% fault assessed to plaintiff. There was sufficient evidence for the jury to conclude that Mr. Joseph was traveling too fast under the circumstances and that he failed to keep a proper lookout. Therefore, NOPSI is liable for all of the damages sustained by plaintiff reduced by the 10% fault which is attributable to her.

DAMAGES
LSA-C.C.P. Art. 1811(F) provides: "The motion for a judgment notwithstanding the verdict may be granted on the issue of liability or on the issue of damages or on both issues." In reviewing the trial judge's decision to grant defendant's motion for JNOV on the issue of damages, we conclude that the motion was properly granted. While it is impossible to place a monetary value on the life of a child, our jurisprudential system has established that a monetary award is the appropriate remedy to one who has suffered the loss of a loved one as a result of the negligence of another. Therefore, it is necessary that some valuation take place to determine what this award should be. Reasonable and impartial jurors in exercising the proper evaluation of Ms. Anderson's damages in this case could not differ as to the fact that an award of $325,000 was excessive. Therefore, the trial judge was correct in granting the JNOV on the issue of damages, as held by the court of appeal.
Once a trial court has concluded that a JNOV is warranted because reasonable men could not differ on the fact that the award was either abusively high or abusively low, it must then determine what is the proper amount of damages to be awarded. In making this determination, the judge is not constrained as the courts of appeal are to raising (or lowering) the award to the lowest (or highest) point which is reasonably within the discretion afforded that court. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). We are aware of some decisions which indicate that the trial judge should be limited by that constraint. See West v. Melancon, 507 So.2d 1250 (La.App. 4th Cir.1987), Barfield v. Jacobs, 527 So.2d 555 (La.App. 3d Cir.1988), Zeagler v. Dillard Department Stores, Inc., 521 So.2d 766 (La.App. 2d Cir.1988). However, we conclude that the better view is that expressed in Rickerson v. Fireman's Fund Insurance Company, *834 543 So.2d 519, 523 (La.App. 1st Cir.1989), where the court stated:
"The Coco standard of review does not apply to a trial court's review of a jury's award. Therefore, after rendering the JNOV, the trial court should have rendered a de novo award based on his independent assessment of injuries and damages."
The trial judge is in a better position to make a damage assessment than is an appellate court. The trial judge hears the testimony, views the evidence, and is able to evaluate the credibility of the witnesses. Once the jury verdict is set aside under the strict JNOV standards, the trial court is then the trier of fact. It should not be limited by the same constraints placed upon an appellate court reviewing a damage award. The trial judge should make an independent assessment of the damages and award a proper amount of compensation under the facts of the particular case.
The appellate court, in determining whether the trial court erred in granting the JNOV as to quantum, once again uses the criteria set forth in Scott, supra, i.e., could reasonable men in the exercise of impartial judgment differ as to the fact that the jury award was either abusively high or abusively low. If the answer is in the affirmative, then the trial court erred in granting the JNOV, and the jury's damage award should be reinstated. On the other hand, if the answer is in the negative, then the trial court properly granted the JNOV, and its damage award based on its independent assessment of the damages is the judgment of the trial court which is reviewed on appeal under the constraints of Coco, supra.
Having determined that the trial judge properly granted the JNOV as to damages in this case, we now turn to a review of the damages awarded in the JNOV by the trial judge. The judge set the damage award at $150,000, after commenting that he was constrained to do so by the jurisprudence. In Reck v. Stevens, 373 So.2d 498 (La.1979), this court explained how prior awards in similar cases should be used in reviewing damage awards. In that case, it was stated that "It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reasons, be considered either excessive, ... or insufficient. [citations omitted] Only after such determination of abuse has been reached, is a resort to prior awards appropriate under Coco for purposes of then determining what would be an appropriate award for the present case."
Likewise, prior awards have a very limited function in the trial judge's determination of a proper general damage award. The trial judge in this case failed to articulate the particular circumstances in this case which warrant a greater or lesser recovery than other circumstances might. A trial court, in making a general damage award, should base its decision on articulated facts and circumstances present in the case before it rather than on awards in similar cases. A trial judge is not constrained by prior awards to set the amount of damages at some predetermined amount.
Nevertheless, after a review of the evidence in this case, we conclude that the $150,000 general damage award set by the trial court was a proper award, although it is not necessarily the highest amount reasonably within the trier of fact's discretion as found by the court of appeal. Ms. Anderson, a single mother, testified to the great loss she felt as a result of the death of her son. She received psychiatric care at Charity Hospital in New Orleans because she was depressed and suicidal from the death of her three-year-old son and from witnessing the boy's crushed body immediately after the accident. Under the circumstances of this case, the trial court general damage award of $150,000 in this wrongful death claim was appropriate.

NEW TRIAL
Defendants alternatively moved for a new trial in the trial court. The motion was denied; however, it was ordered that "in the event an appellate court alters the allocation of the apportionment of negligence assigned by the Court by more than 25%, then the Court would grant a new trial." In its reasons for judgment, the trial court had noted that it declined to *835 grant a new trial because adequate evidence was presented for a fair adjudication of the facts. We agree that the record is complete, and there are no grounds which would justify the granting of a new trial. Therefore, the motion for new trial is unconditionally denied. LSA-C.C.P. Art. 1811 C.(3).

DECREE
For the foregoing reasons, the judgment is reversed in part and affirmed in part. The JNOV assessing plaintiff with 50% fault is reversed, and the jury assessment of 10% fault to the plaintiff is reinstated. The JNOV reducing the general damage award from $325,000 to $150,000 is affirmed, as is the $2,801 for funeral expenses.
It is now ordered that judgment in the amount of $137,521, together with legal interest thereon from the date of judicial demand until paid, and all costs of this proceeding, is hereby rendered in favor of the plaintiff, Kim Anderson, and against defendants, Gerald Joseph and New Orleans Public Service, Inc., in solido.
REVERSED IN PART AND AFFIRMED IN PART.
LEMMON, J., dissents in part and will assign reasons.
NOTES
[1] LSA-C.C.P. Art. 1811 provides:

"A. (1) Not later than seven days, exclusive of legal holidays, after the signing of the judgment or, if notice of the signing of the judgment is required under Article 1913, not later than seven days, exclusive of legal holidays, after the clerk has mailed or the sheriff has served the notice, a party may move for a judgment notwithstanding the verdict. If a verdict was not returned, a party may move for a judgment notwithstanding the verdict not later than seven days, exclusive of legal holidays, after the jury was discharged.
"(2) A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative.
"B. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or render a judgment notwithstanding the verdict. If no verdict was returned, the court may render a judgment or order a new trial.
"C. (1) If the motion for a judgment notwithstanding the verdict is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed and shall specify the grounds for granting or denying the motion for a new trial. If the motion for a new trial is thus conditionally granted, the order thereon does not affect the finality of the judgment.
"(2) If the motion for a new trial has been conditionally granted and the judgment is reversed on appeal, the new trial shall proceed unless the appellate court orders otherwise.
"(3) If the motion for a new trial has been conditionally denied and the judgment is reversed on appeal, subsequent proceedings shall be in accordance with the order of the appellate court.
"D. The party whose verdict has been set aside on a motion for a judgment notwithstanding the verdict may move for a new trial pursuant to Articles 1972 and 1973. The motion for a new trial shall be filed no later than seven days, exclusive of legal holidays, after the signing of the judgment notwithstanding the verdict, or, if notice of the signing of the judgment is required under Article 1913, not later than seven days, exclusive of legal holidays, after the clerk has mailed or the sheriff has served the notice. The motion shall be served pursuant to Articles 1976 and 1314.
"E. If the motion for a judgment notwithstanding the verdict is denied, the party who prevailed on the motion may, as appellee, assert grounds entitling him to a new trial in the event the appellate court concludes that the trial court erred in denying the motion for a judgment notwithstanding the verdict. If the appellate court reverses the judgment, nothing in this Article precludes the court from determining that the appellee is entitled to a new trial or from directing the trial court to determine whether a new trial shall be granted.
"F. The motion for a judgment notwithstanding the verdict may be granted on the issue of liability or on the issue of damages or on both issues."
[2] LSA-C.C. Art. 2323 provides:

"When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss."