KLEES, Judge.
This appeal arises from a suit for personal injuries filed in relation to rear-end automobile collision occurring on May 15, 1989. Plaintiff, Steven Treigle, instituted action claiming injuries to his cervical spine which resulted in a double cervical fusion and aggravation to a pre-existing back condition against the defendants, Wendell Babin, his employer, ANR Freight Systems, and their insurer, ANR Protective Insurance Company. Because ANR’s liability was stipulated, the only issue at trial was damages. The jury returned a verdict in favor of the plaintiff and awarded a lump sum of $50,000.00. The trial judge determined that this award was too low and granted the plaintiffs motion for a judgment notwithstanding the verdict, raising the award to a lump sum of $250,000.00. It is from this judgment that defendants perfect this appeal. After reviewing the record and applicable law, we reverse and reinstate the jury’s original verdict.
The accident in question occurred when Mr. Treigle was struck form behind by an ANR Freight Systems truck while slowing for a red traffic signal at the Paris Road intersection on Chef Menteur Highway. Upon impact, Mr. Treigle’s Chevy Citation was propelled approximately one car length forward. Mr. Treigle was taken from the accident scene by ambulance to the Pendle-ton Memorial Methodist Hospital emergency room where he complained of pain in his neck, lower back, legs, and knee. Whereas Mr. Treigle has had a pre-existing history of severe lumbar problems, this is the first instance that he complained about his cervical spine. The emergency room report reveals that x-rays of Mr. Treigle’s cervical spine were normal, and x-rays of his lumbar spine revealed narrowing of the L3 disc space, which is consistent with his prior lumbar problems.
Two days after the accident at issue, Mr. Treigle first saw his treating physician, Dr. Lucas DiLeo, a general practitioner, complaining of pain in his neck, lower back, both legs, and right knee. Mr. Treigle was diagnosed as having a cervical and lumbar strain. In addition to Dr. DiLeo, Mr. Trei-gle began seeing two neurosurgeons, Dr. R. C. Llewellyn and his partner, Dr. David Jarrott, for his cervical and lumbar discomfort. During the course of his treatment, Mr. Treigle had three MRIs performed on his cervical spine which all revealed a prolapse or bulge at the C5-C6 and the C6-C7 level. Also, a nerve conduction study was abnormal for the lower cervical disc spaces. After conservative treatment failed to alleviate Mr. Treigle’s pain, Mr. Treigle was *1132 admitted to Methodist Hospital on January 20, 1992, where Dr. Jarrott performed a double surgical fusion of Mr. Treigle’s C5-C6 and C6-C7 disc spaces.
Mr. Treigle’s past medical expenses, including the cost of the surgery, totaled $44,367.83, and Dr. Jarrott estimated that his future treatment would “probably be a thousand or so.” The jury was presented with the testimonies and depositions of several physicians who have treated Mr. Trei-gle since his first accident in 1981 through the time of trial, as well as the testimony of Mr. Treigle and his fiance, Ms. Judy Blaylock. After hearing all of the evidence, the jury entered a verdict in the amount of $50,000. The trial judge felt that the jury’s verdict was too low, and that a JNOV in the amount of $250,000.00 was appropriate. The defendants appealed suspensively.
On appeal, the defendants contend that the trial court abused its discretion in granting the JNOV because the court improperly substituted its judgment over the jury’s verdict and failed to follow the jurisprudence which prohibits the court from weighing evidence and passing on the credibility of the witnesses. The defendants assert that ample evidence was introduced at trial for the jury to conclude that Mr. Treigle did not sustain a severe cervical injury in the accident which required a double level fusion.
Extensive testimony and depositions of physicians who treated Mr. Treigle from 1981 through the time of trial called Mr. Treigle’-s credibility as a patient and witness into question. Mr. Treigle’s lower lumbar problems began eight years before the accident at issue. In an 1981 industrial accident, Mr. Treigle sustained extensive lower back injuries at the L4-5 level which required surgery. Mr. Treigle was determined to be permanently and totally disabled and has since been receiving Social Security disability. As a result of the accident, Mr. Treigle has become dependant upon Percodan, a narcotic pain medication. Numerous physicians testified as to treating Mr. Treigle with narcotic medication from 1981 through the time of the trial. However, the physicians prescribing narcotic medication were unaware that Mr. Treigle was receiving similar medication from other physicians. Many physicians treating Mr. Treigle refused to continue treatment when he began to display signs of drug abuse and drug seeking behavior. These physicians testified that Mr. Treigle was an unreliable patient because patients who abused drugs tend to exaggerate the degree of pain that they experience in order to obtain narcotic medication.
Mr. Treigle also made numerous visits to emergency rooms throughout the New Orleans area, complaining of bogus accidents to obtain pain medication. If the emergency room attendants refused to give him narcotic pain medication, he would get angry and threaten the hospitals with lawsuits. This behavior is well documented in the numerous emergency room reports entered into evidence, as well as the testimonies and depositions of the physicians who treated Mr. Treigle from 1981 through the time of trial. Furthermore, while being cross-examined, Mr. Treigle admitted that he would say anything to obtain narcotic pain medication.
In addition to calling Mr. Treigle’s credibility into doubt, the defendants presented expert testimony that supports the contention that Mr. Treigle’s cervical disc disease pre-dated the accident in question. On at least two occasions since the accident in question, Mr. Treigle has attributed his cervical problems to his 1981 industrial accident. Also, Dr. Jarrott, the physician who performed the disc fusion, stated that the MRI revealed desiccation, or drying of the disc level, which probably pre-dated the 1989 accident. Dr. Kirk Webster, who treated Mr. Treigle both before and after the accident in question, testified that Mr. Treigle complained of a neck injury on the day after the accident, but made no further mention of it during the course of his treatment which ended in November of 1990. Also, Dr. LaBorde, an orthopedic surgeon who examined Mr. Treigle and reviewed his pre-accident records, testified that his objective findings were all normal and there was no basis for the cervical fusion. Dr. *1133 LaBorde further stated that Mr. Treigle’s subjective complaints of pain are inconsistent with his objective clinical findings.
On the other hand, the plaintiff asserts that the JNOV was proper because there is “overwhelming” evidence that Mr. Treigle sustained a cervical disc injury in the accident at issue. This contention is based on the fact that Mr. Treigle’s physicians, Drs. DiLeo, Llewellyn, Jarrott and Rodwig all relate Mr. Treigle's cervical injury to the rear-end collision. These physicians admit that their opinions were based upon Mr. Treigle’s subjective complaints of pain and the medical history given by Mr. Treigle, as well as objective clinical findings. Based upon the evidence presented, we find that the jury’s obvious findings that the opinions expressed by the defendants’ experts outweighed the opinion of the plaintiff’s experts were adequately supported by the evidence.
A JNOV should only be granted when the facts and inferences point so strongly in favor of one party that reasonable people could not reach a contrary verdict. It is not appropriate when there is a preponderance of the evidence but only when the evidence points to one conclusion. Wilson v. Hibernia, 517 So.2d 1206 (La.App. 4th Cir.1987) writ denied, 520 So.2d 425 (La.1988), citing, Hastings v. Baton Rouge General Hospital, 498 So.2d 713 (La.1986). However, if there is evidence opposed to the motion which is of such quality and weight that reasonable and fair minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. In making this determination, the court should not evaluate the credibility of the witnesses and all reasonable inferences or factual questions should be resolved in favor of the nonmoving party. Anderson v. New Orleans Public Service, Inc., 583 So.2d 829 (La.1991).
In reviewing a JNOV, the appellate court must first determine if the trial court erred in granting the JNOV, i.e. whether the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict. If the answer to that question is in the affirmative, then the trial judge was correct in granting the motion. If, however, reasonable persons, in the exercise of impartial judgment, might reach a different conclusion, then it was error to grant the motion and the jury verdict should be reinstated. Anderson, supra. In reviewing a decision made on a JNOV, the appellate court must apply the manifest error standard to the trial court’s conclusions. Lopez v. Chicago Bridge and Iron Company, 546 So.2d 291 (La.App. 3rd Cir.1989), writ denied, 551 So.2d 1323 (La.1989).
The issue presented to this court is whether the trial judge abused its discretion in granting the plaintiffs motion for a JNOV and raising the award to $250,000. In applying the standards stated above to the instant case, we cannot find that the “facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict.” After an extensive examination of the record, we find no manifest error in the jury verdict. Accordingly the JNOV is set aside and the jury verdict reinstated.
JNOV SET ASIDE; JURY VERDICT REINSTATED.