|1AMY, Judge.
The plaintiff and her husband filed suit against her chiropractor and the chiropractic clinic at which he practiced alleging injury sustained as a result of malpractice. The jury determined that the chiropractor was negligent, but that the chiropractic clinic was not. Damages were awarded and then increased by the trial judge pursuant to a Motion for Judgement Notwithstanding the Verdict filed by the plaintiff. The Louisiana Patients’ Compensation Fund appeals asserting that insufficient evidence of malpractice was presented, that the jury should have been given the opportunity to apportion fault to actors other than the defendants, that the defendants’ motion for JNOV or new trial should have been granted, and that damages awarded were excessive. We affirm.
| ¡¿Factual and Procedural Background
This malpractice action stems from treatment the plaintiff, Stephanie Thrash, received from the defendant chiropractor, Dr. Bruce Maerhofer. Mrs. Thrash testi *1241 fied that two days prior to her initial visit with Dr. Maerhofer, she began experiencing stiffness in her neck and pain in her shoulder and arm. She further testified that she may have had some leg pain as she had irritated a “knot” on her lower back. Mrs. Thrash explained that Dr. Maerhofer did not examine her, but began a course of treatment that included chiropractic manipulations. She testified that these manipulations were very painful, that her condition became worse after the manipulations began, and that Dr. Maer-hofer continued this course of treatment even after she told him that she was in pain and nauseated. After receiving approximately seventeen manipulations, she ceased her treatment with the chiropractor. She testified her symptoms continued to worsen after stopping these treatments. Mrs. Thrash stated she had trouble performing her housework, difficulty climbing steps, and that she began “throwing up all the time and had bad migraines.”
The record reveals that approximately four months after she ceased treatment with Dr. Maerhofer, Mrs. Thrash sought help from Dr. Nick Pomonis, a family practitioner and osteopathic physician trained in manipulation techniques. Dr. Pomonis testified that Mrs. Thrash complained of pain in the right side of her body, particularly in the arm and neck. He also ordered an MRI on that date, the result, he reasoned, of complaints of lower back pain. He testified that the MRI revealed a herniated disc at the L5-S1 level. Subsequently, Mrs. Thrash was referred to a neurosurgeon and orthopedic surgeon. In an effort to relieve her complaints of Dongoing pain, she first underwent a mi-crolaminectomy at the L5-S1 level, and then a stabilization procedure which required the implementation of rods. She also underwent additional procedures to remove rods used in the stabilization surgery and an implantable bone stimulator.
The record indicates that a complaint was filed regarding the treatment and a medical review panel convened. This panel, which consisted of three chiropractors, determined that although Dr. Maerhofer breached the applicable standard of care, this breach was not a factor in the plaintiffs condition.[1] After the panel’s decision was rendered, this medical malpractice action was instituted when Mrs. Thrash filed a petition alleging that Dr. Maerhofer took an inadequate history from her, failed to properly examine her, and then performed manipulations which resulted either in a herniated disc or caused further complications related to these discs. She alleged that 14due to Dr. Maerhofer’s negligent treatment, she has “suffered extreme pain, anguish, as well as additional and unnecessary expenses, past, present, and future lost wages, and past, present, and future medical expenses.” Mrs. Thrash’s husband, Greg Thrash, also sought damages for loss of consortium. Finally, Mrs. Thrash also named Oak Park Chiropractic Clinic, the clinic at which she sought treatment from Dr. Maerhofer, as a defendant.
After the matter proceeded to trial, a jury returned a verdict finding that Dr. *1242 Maerhofer had breached the standard of care and that the breach was the proximate cause of the plaintiffs injuries. The jury found no breach of the standard of care owed by Oak Park and one hundred percent of the liability was assigned to Dr. Maerhofer. The following damages were awarded by the jury:
Past Medical Expenses: $150,000.00
Future Medical Expenses: $35,000.00
Loss of Past Earnings: $65,000.00
Loss of Future Earnings or Earning Capacity: $50,000.00
Past, Present and Future Pain and Suffering, Both Physical and Mental, Including Loss of Enjoyment of Life, and Disability: $50,000.00
No award was made to Greg Thrash for loss of consortium.
A motion for JNOV was subsequently filed by the plaintiffs seeking an increase in the damages awarded. The motion was granted, in part, by the trial judge which resulted in the following awards of damages:
Past Medical Expenses: • $222,500.03
Future Medical Expenses: $35,000.00
Loss of Past Earnings: $67,119.00
Loss of Future Earnings or Earning Capacity: $209,598.00
Past, Present and Future Pain and Suffering, Both Physical and Mental, Including Loss of Enjoyment of Life, and Disability: $175,000.00
Additionally, the trial court awarded $20,-000.00 to Greg Thrash for loss of consortium. The trial court also denied a Motion for JNOV or New Trial filed by the Louisiana Patients’ Compensation Fund on behalf of Dr. Maerhofer.
We further note that the record contains the court’s approval of Dr. Maerhofer’s offer of $100,000.00, plus interest, in settlement of his personal exposure pursuant to the Medical Malpractice Act. The Louisiana Patients’ Compensation Fund (LPCF) remains as the defendant on appeal and assigns the following as error:
1.The Trial Court erred in denying the Fund’s Motion for a New Trial and/or Judgment Notwithstanding the Verdict where the jury obviously interpreted a bad result as malpractice.
2. The Trial Court erred in fading to instruct the jury that fault could be apportioned to persons other than the defendant.
3. The Trial Judge erred in granting plaintiffs’ Motion For A Judgment Notwithstanding the Verdict and increasing the amount of damages.
4. The amount of damages awarded were excessive.
| ^Discussion of the Merits

Liability

In its first assignment of error, the LPCF contends that the trial court erred in failing to grant a new trial or JNOV. The LPCF argues that the evidence presented does not indicate that Dr. Maerhofer’s treatment was a cause-in-fact of Mrs. Thrash’s injuries.. Specifically, the LPCF contends that “[n]one of the doctors who testified on behalf of Mrs. Thrash qualified to testify on the issue of whether the injury was caused by chiropractic treatment.” It contends that the experts presented by the plaintiff were not qualified to testify as to chiropractic treatment, since they were medical doctors instead of chiropractors or that testimony indicated that chiropractic manipulations could not cause damage to a disc. Thus, the LPCF contends that a new trial or JNOV should have been entered by the trial court.
In response to this first assignment of error, Mrs. Thrash contends that although sufficient evidence was presented for a finding of liability, the LPCF cannot contest liability since Dr. Maerhofer tendered that portion of the judgment for which he was personally liable under the Louisiana Medical Malpractice Act, i.e., $100,000.00. The plaintiff contends that “the tender by Dr. Maerhofer of his $100,000 payment statutorily bars the Patient’s Compensation Fund from subsequently arguing the *1243 issue of liability, including either negligence or causation. For these reasons, the first assignment of error as well as the first issue listed by the Patient’s Compensation Fund in its original appellate brief are improper.”
La.R.S. 40:1299.44(C)(5) provides:
|7C. If the insurer of a health care provider or a self-insured health care provider has agreed to settle its liability on a claim against its insured and claimant is demanding an amount in excess thereof from the patient’s compensation fund for a complete and final release, then the following procedures must be followed:
[[Image here]]
(5) At the hearing the board, the claimant, and the insurer of the health care provider or the self-insured health care provider as the case may be, may introduce relevant evidence to enable the court to determine whether or not the petition should be approved if it is submitted on agreement without objections. If the board, the insurer of the health care provider or the self-insured health care provider as the case may be, and the claimant cannot agree on the amount, if any, to be paid out of the patient’s compensation fund, then the court shall determine the amount of claimant’s damages, if any, in excess of the amount already paid by the insurer of the health care provider. The court shall determine the amount for which the fund is liable and render a finding and judgment accordingly. In approving a settlement or determining the amount, if any, to be paid from the patient’s compensation fund, the court shall consider the liability of the health care provider as admitted and established where the insurer has paid its policy limits of one hundred thousand dollars, or where the self-insured health care provider has paid one hundred thousand dollars.
(Emphasis added.) As explained above, Dr. Maerhofer tendered $100,000.00 after trial in satisfaction of his personal liability. The payment was approved by the trial court.
The Louisiana Supreme Court explained that “the legislative intent of ‘liability’ in Section 1299.44 C(5) was that the payment of $100,000 in settlement establishes proof of liability for the malpractice and for damages of at least $100,000 resulting from the malpractice, which is a very significant benefit to the medical malpractice victim. However, at the trial against the Fund, the plaintiff has the burden of proving that the admitted malpractice caused damages in excess of $100,000.” Graham v. Willis-Knighton Med. Center, 97-0188, p. 15 (La.9/9/97); 699 So.2d 365, 372. Furthennore, in a previous case, the supreme court explained that “[t]he fund cannot contest liability when there is a binding settlement for $100,000 by the health care provider, either before or after trial.” Koslowski v. Sanchez, 576 So.2d 470, 474 (La.1991).
Our review of this matter indicates that the plaintiff complained of liability associated with Dr. Maerhofer’s chiropractic treatments and asserts that these treatments caused injury requiring surgery and causing associated pain. In this first assignment, the LPCF contests whether the chiropractic treatment could have caused any of the damages asserted. The issue of whether Dr. Maerhofer was at fault, i.e., whether he rendered negligent treatment, was resolved by his tender of $100,000.00. According to Graham, all that remains to be resolved as far as liability is the extent of this liability over the $100,000.00 awarded. Accordingly, the LPCF’s general argument in this assignment regarding the Motion for JNOV and New Trial due to inadequate evidence of any injury is not properly before the court.
The causation of particular injuries, those above $100,000.00 is an appealable issue and can be discussed as causation of particular damages. Although the-LPCF does not do so with particularity as far as *1244 individual treatments, surgeries, etc., and their relation to the chiropractic treatment, its continued ability to appeal these issues is reflected below in our review of the damages awarded.

Apportionment of Fault

In its next assignment of error, the LPCF contends that the trial court erred in failing to instruct the jury that it was proper to assign percentages of fault to Mrs. Thrash and others possibly at fault in causing her injuries. The LPCF argues that |8evidence existed indicating that parties, other than the named defendants, could have been at fault. In particular, the LPCF argues the jury could have found Mrs. Thrash at fault as she waited several months after ceasing treatment with Dr. Maerhofer before consulting another doctor and that she had other problems resulting in her repeated visits to doctors and the hospital. Further, the LPCF contends that other health care providers could have been found responsible for some of Mrs. Thrash’s injuries as there was indication that her first back surgery was unsuccessful resulting in the need for subsequent treatment and also because there was evidence of excessive use of pain killers.
Comparative fault is provided for by La. Civ.Code art. 2323 which states:
A.In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person’s insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person’s identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.
B. The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of Lability, regardless of the basis of liability.
C. Notwithstanding the provisions of Paragraphs A and B, if a person suffers injury, death, or loss as a result partly of his own negligence and partly as a result of the fault of an intentional tort-feasor, his claim for recovery of damages shall not be reduced.
The verdict form used by the jury in this case listed the defendants as parties between whom fault could be apportioned in the event of a finding of liability. The |mjury instructions, which were filed into the record, indicate the jury was instructed as follows:
If you determine that the plaintiff has met her burden of proof, Louisiana law requires that you divide the total responsibility for this incident among all those who were involved in it. You should do this by assigning percentage of fault to the various persons involved, which will total 100%. If you are convinced that the injuries were the sole result of one or both of the defendant’s [sic] sub-standard conduct, you may return a verdict for the plaintiff by assigning 100% of the responsibility to one or both of the defendants. You are free to assign whatever percentage you feel appropriate, and you should do so by answering the questions which will be provided to you on a special verdict form.
Our review does not indicate that the instructions or the verdict form were inadequate in not informing the jury that fault could be apportioned to Mrs. Thrash or her physicians. Rather, the evidence was insufficient to permit a finding of fault by these other parties/nonparties. The LPCF contends that Mrs. Thrash could *1245 have been found at fault as the medical review panel opinion points out that she waited several months before seeking treatment after visiting Dr. Maerhofer. However, review of the panel decision does not indicate that the panel found that his treatment caused/exacerbated her condition. The panel stated that “the delay-caused by continuing this patient in chiropractic care did not exacerbate her condition in any way. Also, the patient waited several months after discontinuing her treatment with Dr. Maerhofer before consulting another physician for her problem.” Thus, it appears the panel only discussed Mrs. Thrash’s delay as it related to Dr. Maerhofer’s continuation of treatment rather than any harm her delay could have caused. Further, there is no other evidence indicating that Mrs. Thrash’s delay after her chiropractic ^treatments worsened her condition, a condition the jury determined to have been caused by Dr. Maerhofer.
With regard to other evidence advanced by the LPCF as indicative of Mrs. Thrash’s fault in her own injuries, we conclude that this evidence also did not require her inclusion on the verdict sheet nor an instruction as to her fault. Rather, the majority of the evidence described by the LPCF is evidence regarding Mrs. Thrash’s many other health concerns, including heart, gallbladder, and stomach problems. There is no indication that the plaintiff sought, nor was she awarded, any damages related to these problems. If she had been awarded damages for her health concerns other than those related to her spine, the evidence indicates that the associated medical expenses and general damages would have far exceeded those awarded. In fact, the stipulation entered regarding past medical expenses limited the figure to those associated with Mrs. Thrash’s neck and back problems and dependency on pain medication. Furthermore, there is no evidence indicating that the dependency on the pain medication was due to fault of Mrs. Thrash, but, rather, is a problem associated with similar patients. Accordingly, we find no evidence in this area that could have indicated fault on the plaintiffs part.
Finally, as for the LPCF’s contention that other physicians should have been listed as a party potentially at fault, we find that, here too, the record is devoid of any evidence that would have permitted any assignment of fault to any of Mrs. Thrash’s other physicians. While there is indication that her first back surgery was unsuccessful, there is no indication that this was the result of a negligent action by another party. Therefore, we find this assignment to be without merit.

hyJNOV and Damages

The LPCF next contends that the Judgment Notwithstanding the Verdict granted by the trial court which increased the damages awarded was unwarranted. Furthermore, the LPCF argues that the amounts awarded in the JNOV for past medical expenses, loss of past earnings, loss of future earnings/earning capacity, general damages, and loss of consortium are excessive.
As explained in Anderson v. New Orleans Public Serv., Inc., 583 So.2d 829 (La.1991), a JNOV is appropriate when the evidence points so overwhelmingly in the favor of one party that the court concludes that reasonable men could not reach a different conclusion. The motion is not appropriate merely where the court finds that a preponderance of the evidence is in favor of the mover. “In making this determination, the court should not evaluate the credibility of the witness, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.” Id. at 832. On review, an appellate court uses this same criteria in determining whether the JNOV was appropriately granted. Id. Thus, as the damages complained of the LPCF were part of the JNOV, we determine whether the evidence supports the granting of the motion.

*1246
Past Medical Expenses

As detailed above, the jury awarded $150,000 for past medical expenses. This figure was raised to $222,500.03 by trial judge pursuant to the JNOV. Reference to the record indicates that the parties stipulated that past medical expenses amounted to $222,500.03 and that this stipulation was relied upon by the trial judge in granting the JNOV in this area. In oral reasons for ruling, the trial judge stated:
113Certainly, with regards to the past medical expenses, the evidence introduced in the record was $222,500.03 and the jury decided to award $150[,000.00], The Court will find that reasonable minds couldn’t differ upon this question of damages and will not [sic] increase it. I will order the award — set aside a jury award in this area and order the damages in the amount of past medical expenses of $222,500.00.
The evidence referenced by the court is a summary of medical expenses entered into the record as Plaintiffs Exhibit 10. This exhibit was entered as part of a stipulation between the parties. The plaintiffs attorney read the following stipulation into the record regarding these expenses:
The defendants deny that any of the medical treatment that produced these bills was made necessary or caused by the chiropractic treatment in 1992. The plaintiffs disagree and maintain that the bills were made necessary and caused by the chiropractic treatment in 1992. The plaintiffs also maintain that a review of all medical bills has been conducted and that the medical bills included in P-10 are exclusively limited to bills for treatment of the neck or back, including related hospitalizations, medications prescribed by physicians responsible for the medical care of the neck and back and treatment for dependency on prescribed medication.
Considering this stipulation and the list of medical expenses entered into the record, we find no error in the JNOV as it relates to past medical expenses. While the LPCF contends that the jury obviously determined that a portion of the expenses were not related to the chiropractic treatment, reference to the medical expenses provides no basis for the jury’s $150,000.00 award. The expenses contained in the exhibit are listed only by date and medical service provider. There is no indication what services are associated with the expenses. Accordingly, we find no reasoned basis on which the jury could have reduced the expenses below the figure stipulated to by the parties. We also find no basis in the record for the LPCF’s contention in its brief that “[t]he Injury may have found that these bills were excessive or incurred in bad faith.” Thus, we find the argument regarding past medical expenses to be without merit.

Loss of Past Earnings

The jury awarded $65,000.00 for loss of past wages. In granting the JNOV, the trial court increased the award stating that “the only conclusion could have been reached from the evidence was $67,119.00.” In its brief to this court, the LPCF’s entire argument on this issue is as follows:
The plaintiffs claim a loss of past earnings of $67,119.00. The jury awarded less than this amount. As indicated above, the defense argued a lack of causation. Clearly, the jury decided that the plaintiff did not prove her entitlement to the full sum of the loss of past earnings. Accordingly, the amount awarded by the jury should not be increased.
The evidence presented by the plaintiff at trial regarding Mrs. Thrash’s loss of past earnings was the testimony of Dr. Charles Bettinger, an expert in evaluation and calculation of economic losses. He stated that his calculations indicated Mrs. Thrash’s loss of past earnings to be $67,-119.00. The remainder of the record reveals no basis for a determination that the bulk of this figure, $65,000.00, was attributable to the chiropractic care, but that approximately $2,000.00 of the sum was *1247 not. Therefore, we find no error in the trial court’s determination that the jury verdict was subject to a JNOV.

Loss of Earning Capacity

The jury awarded $50,000.00 for loss of future earnings or earning capacity. This figure was raised to $209,598.00 by the JNOV. In awarding the higher amount for loss of earning capacity, the trial judge stated:
|1BThe more complicated question is a question of loss of earning capacity and general damages. In review of the cross-examination testimony and direct testimony, the only expert offered in this area, the Court finds that the reasonable minds couldn’t differ upon this award in that it was based upon a minimum wage amount and was based upon uncontra-dicted testimony that the plaintiff was incapacitated, unable to perform even minimal work. The type of work that the plaintiff was doing was sitting and standing for long periods of time as a teller at a bank and it appeared to be what she was suited and trained for. Because of her surgeries to her back, will make this highly unlikely she will be able to pursue such an employment. The Court could not find any employment that this plaintiff could participate in given the condition of her back that would not require some prolonged sitting or standing. So, I would find that it was unreasonable for the jury to award a lessor [sic] amount than was introduced in the evidence of $209,598 and will so order an award of future earning capacity in that amount.
The record supports the trial court’s finding. The evidence strongly indicates that the plaintiff will not be able to return to work, even sedentary work, due to her back condition. Furthermore, the plaintiffs expert made his calculations for loss of earning capacity presuming the lowest allowable wage, minimum wage.[2] Using this calculation, he concluded that her loss of earning capacity is $209,598.00, the figure awarded by the trial court. The defense presented no competing expert evidence regarding this area of recovery. In cross-examination of Mrs. Thrash’s expert, Dr. Bettinger agreed that Mrs. Thrash’s subsequent, unrelated health problems such as a heart bypass surgery would have interrupted her ability to work notwithstanding the back surgeries. However, other than this admission, there is no evidence indicating the extent or duration of any such interruption. Accordingly, the jury was left only |1fiwith evidence that Mrs. Thrash suffered $209,598.00 in loss of earning capacity. Given this evidence, the JNOV in this area was appropriate.

General Damages

The jury awarded general damages in the amount of $50,000.00. The trial court raised the award to $175,000.00 stating only that the jury’s figure was unreasonable and that “[t]here is no basis under the law in the case.” The LPCF’s argument in this area raises many of the issues discussed in its assignment regarding liability. Rather than directly attacking the quantum awarded as excessive, the LPCF contends that “the jury could have found that the surgery and other resultant damages were not caused by any malpractice on the part of Dr. Maerhofer.” Thus, the LPCF argues that since the jury was not required to find that all injuries claimed resulted from the chiropractic treatment, the $50,000.00 awarded by the jury was not abusively low.
Our review of the evidence reveals that the trial court correctly determined that the $50,000.00 awarded was inadequate. The medical expenses awarded in this case related to extensive medical treatment, several lumbar surgical procedures, and treatment associated with addiction to medication prescribed for associated pain. There is evidence that Mrs. Thrash’s medi *1248 cal problems are ongoing and, in fact, the jury awarded $35,000.00 for future medical expenses, a figure uncontested by the LPCF. Furthermore, Mrs. Thrash now walks with a cane, a requirement she described as “embarrassing,” and her husband testified that his wife has repeatedly fallen and that they can no longer enjoy the activities that they once did. Given this |17evidence, we find no error in the trial court’s determination that the jury’s award in this area was unreasonable, necessitating an increase by JNOV.

Loss of Consortium

The jury did not make an award to Greg Thrash for loss of consortium. In making an award in this area, the trial judge explained' that “reasonable minds could not have differed to a minimum award, and at a minimum the Court finds considering the jurisprudence $20,000 and will so award.” The LPCF contends that the jury did not have to find that the burden of proof was met in this area or that the jury could have believed that any change was associated with her other health problems which are unrelated to Dr. Maerhofer’s treatment.
We conclude that, here too, the trial judge correctly altered the jury’s verdict pursuant to the JNOV. Greg Thrash’s testimony regarding the change in their marriage since Mrs. Thrash’s treatment is uncontested. He stated that the activities together have changed, that they can no longer go dancing as they once did, and that they now dine out, go to the movies, or stay at home and watch television for entertainment. He also testified that he only leaves his wife alone while he is working and that his wife’s condition has caused “lots of stress, some depression; mainly stress.” Greg Thrash’s testimony in this regard is uncontested. While possible that some of the changes described could have also been affected by other health problems, it is clear from the testimony that the back problems impacted their relationship. In the presence of this uncontested evidence, the jury clearly erred in denying an award for loss of consortium.
This assignment is without merit.
hsDECREE
The judgment of the trial court is affirmed. All costs of this proceeding are assigned to the defendant, the Louisiana Patients’ Compensation Fund.
AFFIRMED.

. The medical review panel found as follows:
The evidence supports the conclusion that the defendants, Dr. Bruce Maerhofer and Oak Park Chiropractic Clinic, failed to comply with the appropriate standard of care as charged in the complaint, however, the conduct complained of was not a factor of the resultant damages.
Conclusion based on the following:
The case history and examination of this patient were inadequate. Dr. Maerhofer was negligent in failing to diagnose a possible cervical disk problem, not keeping daily progress notes, and not refering [sic] the patient out after seeing her for several weeks without response to treatment. However, knowing or not knowing that the patient had a ruptured disk did not make her condition worse; the manipulative treatment that was administered did not cause the disk to be damaged; and the delay caused by continuing this patient in chiropractic care did not exacerbate her condition in any way. Also, the patient waited several months after discontinuing her treatment with Dr. Maerhofer before consulting another physician for her problem.

. As Mrs. Thrash’s expert clearly indicated that his figure was based upon a presumption of earnings equal to the minimum wage, we are unpersuaded by LPCF's contention that the jury relied upon Mrs. Thrash’s early misrepresentation that she had a college degree.