| ,OV REHEARING
PER CURIAM.
Joseph Lee Delco, Jr. applied for rehearing, arguing: 1) our decision in Delco v. Stafford, 01-0018 (La.App. 1 Cir. 2/20/02), 813 So.2d 458 overrules Griffin v. Louisiana Sheriff’s Auto Risk Association, 99-2944 (La.App. 1 Cir. 6/22/01), 802 So.2d 691 and Thibodeaux v. Wal-Mart Stores, Inc., 98-0556 (La.App. 1 Cir. 4/1/99) 729 So.2d 769, writ denied, 99-1244 (La.6/18/99), 745 So.2d 28; 2) that the jury could only find that Mr. Delco suffered a ruptured disc as a result of this accident and $3,000 general damage award effectively overrules every First Circuit case awarding greater damages for a similar condition; and 3) in overturning the JNOV, we neglected to find that the trial judge was manifestly erroneous.
We find no merit in plaintiffs contention that our decision in Delco v. Stafford overruled Griffin and Thibodeaux. In fact, we applied these two cases to support our holding here. On review of a JNOV award of higher quantum, the appellate court uses the same criteria as the trial court:
could reasonable men in the exercise of impartial judgment differ as to the fact that the jury award was ... abusively low. If the answer is in the affirmative, then the trial court erred in granting the JNOV, and the jury’s damage award should be reinstated....
Thibodeaux v. Wal-Mart Stores, Inc., 729 So.2d at 771, citing Anderson v. New Orleans Public Service, Inc., 583 So.2d 829, 834 (La.1991). The legal principles set forth in these cases bind our future decisions; the particular facts (such as injuries sustained and the amount of damages awarded for those injuries) may guide us in our review, but do not control our conclusions.
In Thibodeaux, the appellate court believed that plaintiffs self-serving testimony and lack of full disclosure prejudiced her with the jury. But Griffin is distinguishable because “undisputed objective medical evidence cannot be called into question by the inaccuracies in plaintiffs deposition testimony.” Thibodeaux v. Wal-Mart Stores, Inc., 729 So.2d at 771.
Plaintiff farther contends that because the jury awarded damages for medical expenses and for lost wages, “it cannot be said that this jury in its finding did anything other than find as a fact that this man had had a disc injury ...” We disagree.
As in Thibodeaux, the jury may have found this plaintiffs testimony was self- *465 serving. Plaintiff told doctors that a sideswipe collision was head-on and he neglected to tell them about prior back injuries. But unlike Ms. Thibodeaux, he cannot rely on “undisputed medical testimony.” In his memorandum in support of the application for rehearing, plaintiff contends that “the evidence was uncontroverted that the plaintiff had sustained a disc injury and that this injury resulted in the need for a lumbar laminectomy.” The record reads otherwise.
Dr. Kinnard found spasms in plaintiffs lower back, but Dr. Cenac testified that he found no concrete evidence of injury and would not recommend surgery:
A. When I say normal, it was normal for a ruptured disk. There were some findings associated with wear and tear and degenerative changes |3in his back and some arthritic changes in his facet joints. That’s abnormal in a 20-year-old, but it’s not abnormal, it’s something you expect in an older person.
Q. All right.
A. But it’s a[n] age work-related thing not a traumatic thing.
Q. All right. Did you believe, when you reviewed the films, that there was any nerve root impingement by any herniated disk in this man’s back?
A. No.
Q. Taking all the diagnostic studies and the records that you reviewed, would , you have performed surgery on this man’s back?
A. I would not have recommended surgery.
Q. On your examination, you noted that there was (sic) no muscle spasms?
A. I found that, that’s correct.
The physical therapist, Trevor Bardarson, testified that he believed plaintiff tried to exaggerate his symptoms for the functional capacity test:
Q. You reached a conclusion that the [functional capacity] tests really didn’t tell you much, because Mr. Delco did not—
A. Did not exert a maximal effort, yes, correct.
When I pushed on his vertebrae, which is (sic) the bones down at the lower end of the back, on the low part of the back, he had some pain that he described as severe, and he rated that as 8 out of 10. What I noted was there was no significant change in heart rate there. So his heart rate, which we have a heart rate monitor strapped to them so we can monitor heart rate continually, the heart rate stayed the same.
So, during the focus testing, I put two measuring instruments on their back.... Now, it’s hooked into a computer so the computer is recording what happens as they move. And I ask them to bend forward as far as they can, tell them, is that as far as you can go? Yes, that’s as far as I can go. Okay. I hit the button.
I do three of these in repetition to see if he’s going the same distance every time, et cetera, then I have him bend 14backwards. And so this is all when I’m asking him to move and show me the ability he has to move.
And on nonfocused testing, which is [a] big part of the evaluation where when they’re doing other activities that may involve similar motions, is (sic) the motions consistent? [A]re they the same?
Q. In this particular category and in the photographs that you took of Mr. Del-co, did you see a difference in the focused and nonfocused testings?
*466 A. Yes. In — in focused testing, we had little over half of the available lumbar, forward bending and in nonfoeused testing, it was pretty much full. There was full motion there.
We do [maximal volitional effort] tests to find out if they’re actually trying.
Q. And what did these tests show? Do you have the results of those tests?
A. Yeah. Out of six — out of five different tests, four of them are positive for what we would call “submaximal efforts.” So, he didn’t try as hard — as hard as he possibly could.
Plaintiff and defendants offered conflicting testimony on the extent, cause and even existence of plaintiffs injuries. And no doctor concluded outright that plaintiff was unable to return to work. Even Dr. Kinnard found that “he can go back and work in at least a light capacity.” And he did not completely rule out plaintiffs return to truck driving:
Q. Do you think he — or would you recommend a job that required him to do a lot of climbing on and off a truck. A. No.
Q. Or — or lifting a 50-pound tire and repairing it?
A. No. Again, you know, again, that could be done maybe periodically, but it’s not the type of thing he can do regularly.
Dr. Cenac testified that “most (sic) probably than not he would be able to return as a truck driver ...”
Accordingly, without evaluating credibility or weighing evidence, we hold that reasonable men could differ on the severity of plaintiffs injuries, if | sany, the extent of his disability, if any, and the amount of damages that should have been awarded.
Plaintiff incorrectly concludes that certain injuries merit a particular amount of damages. Louisiana jurisprudence has held time and again that the jury’s discretion in awarding damages is great, even vast:
[A] jury, in the exercise of its discretion as a factfinder, can reasonably reach the conclusion that a plaintiff has proven his entitlement to recovery of certain medical costs, yet failed to prove that he endured compensable pain and suffering as a result of defendant’s fault.... [I]t would be inconsistent with the great deference afforded to the fact-finder by this court and our jurisprudence to state that, as a matter of law, such a verdict must always be erroneous.
Wainwright v. Fontenot, 00-0492 (La.10/17/00), 774 So.2d 70, 76.
Plaintiff seems to want to springboard past the more difficult considerations in our review of its JNOV. In its reasons for judgment, the trial court expressed “surprise” and stated that “the verdict needs to be corrected.” The trial court based the JNOV on its own opinions of witnesses’ credibility and weight of the evidence:
Dr. Kinnard gave very credible and a reasonable explanations (sic) of why there was a herniated disk (sic). And the Court believes that Dr. Kinnard’s evaluation was correct in this case. Dr. Cenac was an I.M.E. By law, the treating physician, his testimony is entitled to greater weight. And I don’t necessarily believe that the jury rejected that he received a herniated dis(c).
But from a credibility standpoint, Dr. Kinnard’s testimony was certainly credible, and the Court does accept that as being the credible version. If I was the judge in that case, I certainly would have accepted Dr. Kinnard’s testimony under the circumstances we had.
*467 I had great concern for the [functional capacity evaluation] testimony.... But I could see where [it] would have lended (sic) credence to the theory that maybe he wasn’t hurt as bad and he was malingering or not of being cooperative.
But on the other side of the coin, if you listen to the doctor’s explanation, or the, you know, the explanation for the response and other possible reasons for those responses, that |fidid not lend to me a reasonable explanation that would indicate that the Plaintiff was malingering or not being credible.
Based on the — the Court found the Plaintiff credible; I just didn’t find him very verbal.... While he did different types of jobs, it appeared that he always seemed to be moving on to some higher paying jobs in his work history, and he exhibited a willingness to work. So, the Court feels that, you know, that aspect of the award, the future loss (sic) wage needs to be modified.
Only if we find that the trial court properly granted the JNOV will we review the JNOV using the manifest error standard. Griffin v. Louisiana Sheriff’s Auto Risk Association, 802 So.2d at 711. In Delco, we found that the trial court improperly granted the JNOV. We had no reason nor legal authority that would allow us to examine the JNOV using manifest error. REHEARING DENIED.
GONZALES, J., agrees and assigns additional reasons.