hMURRAY, J.,
concurs in part and dissents in part.
For the following reasons, I concur in the majority’s reversal of the trial court’s judgment but dissent from the remand for a new trial.
As the majority notes, the instant case is fraught with procedural problems. James Hunter brought this medical malpractice action against several physicians and Tou-ro Infirmary Hospital as a result of his wife’s death on February 1,1993, while she was a patient at the hospital. At trial, the jury was given a special verdict.form including interrogatories. After deliberation, the jury returned the verdict form with answers to the interrogatories that were consistent with each other and that together expressed the following conclusions: (1) Three defendants (Nurse Bonne-val, Dr. Phelan, and Touro Infirmary) breached the standard of care; (2) The breach by only two of these defendants, Dr. Phelan and Touro, caused Ms. Hunter’s death; (3) The allocation of fault was 0% to Nurse Bonneval, 50% to Dr. Phelan; and 50% to Touro; and (4) The total damages amounted to $800,000.
Upon polling the jury by means of a show of hands, the trial judge then determined that only eight jurors, rather than the requisite nine, had agreed that the breach by Nurse Bonneval was not a cause of Ms. Hunter’s death. Immediately after polling the jury and without further investigation, the trial court dismissed the jury. The plaintiffs counsel made an oral motion for the court to enter judgment | ¡>in accor *1219 dance with the verdict. As the majority opinion reflects, the trial judge responded: “Well, I don’t even know how to formulate it at this point. We don’t have a complete verdict.” Counsel for LSU Medical School/Dr. Phelan then orally moved for a mistrial or alternatively, a JNOV. The trial court did not rule on these motions. As the majority notes, on April 24th the court rendered judgment ordering a new trial, and in its written reasons, the court expressly recognized that it had “accepted, although it should not have, the verdict returned.”
Subsequently, however, the trial court vacated its ruling granting a new trial and rendered judgment in favor of the defendants, dismissing plaintiffs suit. In its reasons for that judgment, the court stated that although it still believed it had no discretion under La.-C.C.P. article 1811 but to order a new trial, it was deciding the case based upon the parties’ request that “the Court act on the motions for judgment n.o.v. because they did not want to go through the expense of a new trial and were willing to take the matter, regardless of how the Court rendered a judgment, to the Court of Appeal for resolution.” Describing the jury’s verdict as “deficient,” the trial court noted its decision to treat the verdict as a return of “no verdict” under article 1811. The trial court then proceeded to decide the case, presumably on a de novo basis as if it were the factfinder.
I agree with the majority that a verdict was returned in this case, one which the trial judge, by his own admission, accepted; therefore, the trial judge erred by failing to choose one of the three options open to him under the express terms of article 1811(B): entering judgment in accordance with the verdict, ordering a new trial, or granting a JNOV. I find no authority permitting the trial court to do what it did in this case — that is, to declare the verdict “deficient” and therefore treat it as a return of no verdict, thus allowing the trial court to decide the merits of the case without first determining, according to the very stringent standard of Anderson v. New Orleans Public Serv., Inc., 583 So.2d 829 (La.1991), that a JNOV was | ¡¡warranted. I also agree with the majority’s conclusion that the parties did not consent to having the trial judge decide the merits of the case de novo. Accordingly, I concur in the majority’s reversal of the trial court’s judgment.
However, I believe that the jury’s verdict in the instant case was valid: it was not internally inconsistent. The sole inconsistency was that the polling of the jury did not conform to the jury’s written verdict form[1] mth regard to one interrogatory only. However, the jury’s answer to the other interrogatories, for which the polling confirmed a sufficient majority of votes, confirmed the jury’s intent and showed the verdict to be completely consistent even absent an answer to the one problematic interrogatory. The fact that 10 jurors agreed that the fault allocated to Nurse Bonneval was “0%” renders totally meaningless, or at least harmless, the absence of a valid answer regarding causation as to that defendant. The same conclusion should be drawn from the fact that a sufficient majority of the jurors (ten and eleven, respectively) agreed to the assignment of 50% of the fault to Touro, and the remaining 50% to Dr. Phelan.
*1220 La.-C.C.P. art. 1813(C), which applies to instances when the jury returns a general verdict accompanied by answers interrogatories, states:
When the general verdict and the answers are harmonious, the court shall direct the entry of the appropriate judgment upon the verdict and answers, (emphasis added)
Because the answers and verdict are harmonious in the instant case, I believe the trial court, once it accepted the verdict, was obligated to enter judgment in accordance with it. Furthermore, I do not believe that the trial court was relieved |4of this obligation because of the discrepancy revealed by the polling of the jury in the instant case. In U.S. F & G v. Hi-Tower Concrete Pumping, 574 So.2d 424 (La.App. 2d Cir.1991), the Second Circuit considered a similar situation to that of the instant case. In that personal injury case, the jury answers to interrogatories showed that the jury had determined by a vote of 9 to 3 that a particular defendant was not strictly liable for the plaintiffs injury (interrogatory # 2), but was guilty of negligence that was a proximate cause of plaintiffs accident (interrogatory #4). A subsequent polling of the jury, however, showed that the vote on each interrogatory was actually 8 to 4, one less than was required for an answer. Because the jury had also returned answers to subsequent interrogatories determining that the plaintiff was guilty of contributory negligence that caused his accident, the trial judge entered judgment for the defendants.[2] The appellate court affirmed that decision, declining to review the case de novo. 574 So.2d at 437. The court noted that the polling of juries in civil cases has no statutory or codal authority, but has been a jurisprudentially recognized right. The court further noted that if the polling reveals a number of votes that is insufficient to sustain the verdict, the trial judge may, in his discretion, order the jury to re-deliberate, declare a mistrial or grant a new trial. Id. In the situation presented, however, the Second Circuit held that “any error by the trial court in its handling of inconsistencies between the verdict and the poll was harmless error” in view of the jury’s finding that the plaintiff was contributorily negligent. The appellate court concluded that the negligence or strict liability of the defendant was of little consequence because the plaintiffs fault barred his recovery. Id.
Similarly, in the instant case, valid answers to the remaining interrogatories rendered insignificant any uncertainty as to the jury’s vote on the particular ^interrogatory involving Nurse Bonneval. In view of the advanced age of the plaintiff, Mr. Hunter, and the fact that it has been more than nine years since his wife’s death, I believe a remand of this matter for a new trial is not only unnecessary, it is unfair. Because the jury’s verdict was not inconsistent and any discrepancy revealed by the jury polling was harmless error, I would reverse the trial court’s judgment and reinstate the jury’s verdict, rendering judgment in accordance with the responses reflected on the written verdict form. I therefore dissent from the majority’s decision to remand for new trial.

. Indeed, the transcript reflects that the jury was more likely to have been confused during the polling than during the actual voting in the jury room. Before the polling began, at least one juror complained that he did not have his notes or the jury form, and was told by the trial judge that he could follow along on someone else's form, presumably the juror standing next to him..

. The accident in question occurred before comparative fault was adopted in Louisiana on August 1, 1980; under the law in effect at the time, contributory negligence of the plaintiff was a complete defense to recovery. 574 So.2d at 434.