ON APPLICATION FOR REHEARING
hBYRNES, Judge.
This Court agreed to grant rehearing upon discovering that the plaintiff had filed an answer to the appeal in the trial court, a procedure that has been recognized but which creates problems for this Court because we are unaware of anything that occurs outside of the record presented to this Court.
Pursuant to the order of this Court the plaintiff furnished us with a copy of the transcript of the proceedings in the trial court dated October 30, 1998 with which we hereby supplement the record. A review of that transcript eliminates the ambiguity referred to in our original opinion. We find that it was not the intention of the trial judge to reduce the $25,327.98 award by 50% attributable to plaintiffs comparative negligence. The JNOV overturns the jury finding of 50% plaintiff comparative negligence.
Having cleared up this ambiguity, we find there is no reason to remand. The record is sufficiently complete to allow this Court to conduct a full review. In the conduct of this review plaintiff is entitled to have his answer to the appeal considered.[1]
|2The defendants-appellants assigned only two errors: (1) The inclusion by the trial court of costs for replacement of the roof and waterproofing which the defendants contend are unrelated to the termite damage; and (2) the failure of the trial court to assign comparative fault to the plaintiff. Accordingly, the defendants have, in effect, conceded the fundamental question of whether they can be held liable for termite damages. Defendants challenge only the extent of those damages and the degree to which plaintiffs recovery should be reduced by his own comparative fault.
The plaintiff asked this Court to address three issues only: (1) The granting of the defendants’ motion for JNOV; (2) the question of whether there was any basis for the finding of comparative fault on the part of the plaintiff; and (3) whether the trial court should have awarded additional damages for the plaintiffs overall loss on his investment.
*6 Because of the way the parties have postured their appeals, there are no terms in the agreements between the parties, whether written or oral that need detain this Court. We may assume that the defendants have liability arising out of the agreement(s) - we need only determine the extent of that liability.
The standards for reviewing the decision of the trial court to grant a motion for JNOV are as set forth in Anderson v. New Orleans Public Service, Inc., 583 So.2d 829 (La.1991):
A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach Indifferent conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might, reach different conclusions, the motion should be denied. [Citation omitted.] -In making this determination, the court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.
In reviewing a JNOV, the appellate court must first determine if the trial court erred in granting the JNOV. This is done by using the aforementioned criteria just as the trial judge does in deciding whether to grant the motion or not, i.e., do the facts and inférences point so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict? If the answer to that question is in the affirmative, then the trial judge was correct in granting the motion. If, however, reasonable men in the exercise of impartial judgment might reach a different conclusion, then it was error to grant the motion and the jury verdict should be reinstated. [Emphasis added.]
The trial judge adverted to the aforementioned Anderson standards in the written reasons he issued in connection with the JNOV. We adopt the reasons of the trial judge as quoted in the original opinion of this Court including the following omitted portion shown by the ellipsis in our original quotation:
Recognizing that the defendant can only be held liable for gross negligence[2] relating to his pre-1992 treatment, the only damages for which the defendant can be held liable are those post the 1992 treatment. Evidence of negligence in the 1985 treatment exists. The Court does not believe the concrete was drilled around the columns. But, that failure is ordinary negligence, not gross negligence; gross negligence is equivalent to wanton disregard for appropriate action.
^Plaintiffs contractor, Mr. Richard Pad-dison, prepared an estimate of $183,501.00 for the repair and moisture control work. Another of plaintiffs witnesses, Mr. Mark Dahlman, estimated the cost of repairs to be $200,000.00. However, the total of the invoices actually paid by Mr. McAshan for the work at the property was only *7 $135,966.60. It was conceded that the $135,966.60 included $9,326.99 for work performed on Mr. McAshan’s St. Charles Ave. residence that was totally unrelated to the building that is the subject of this suit. Therefore, the total of invoices paid in connection with this property was only $126,639.91. We agree with the trial court’s conclusion that the “actual governs over the theoretical” and that the record will support no reasonable conclusion other than that the cost of repairs must be based on actual invoices paid for work done to the Girod Street building. We find that no reasonable fact finder would disagree with the trial judge’s finding that the record will not support a finding that more was spent to address the termite problem in plaintiffs budding than could be supported by the paid invoices presented. Further, from among those invoices, no reasonable fact finder would dispute the fact that the invoice for $9,326.66 representing work done on the plaintiffs St. Charles Ave. home is not recoverable by the plaintiff in connection with termite damage sustained by the plaintiff at his 825 Girod Street building. Accordingly, we conclude that the threshold decision made by the trial judge to grant the JNOV was not error.
Once the jury verdict is set aside under the strict JNOV standards, the trial court is then the trier of fact. Anderson v. New Orleans Public Service, Inc., 583 So.2d 829, 834 (La.1991); Pino v. Gauthier, 633 So.2d 638, 653 (La.App. 1 Cir.1993), writ denied 94-0243 and 94-0260 (La.3/18/94), 634 So.2d 858 & 859. As the trier of fact, the trial judge then confects a de novo award based on his independent ^assessment. Id. and Anderson, supra, citing Coco v. Winston Industries, 341 So.2d 332 (La.1976); Perkins v. Guaranty Nat. Ins. Co., 95-229, p. 8 (La.App. 3 Cir. 11/2/95); 667 So.2d 559. In so doing, the trial judge is not constrained as are the courts of appeal to the lowest (or highest) point which is reasonable within the discretion afforded the trial court. Id.; Anderson. We infer from the foregoing that once this Court determines that the granting of the JNOV by the trial court was proper, this Court then must treat the findings of the trial court as though the trial court had been the original finder of fact, whether this means applying the manifest error standard of review to findings of fact generally, or affording the trial court the breath of discretion allowed to the find finder in those areas insusceptible of precise determination such as comparative negligence or general damages.[3]
*8 Therefore, we will now proceed to review the award of the trial judge by applying the standard set forth in Coco v. Winston Industries, Inc., 341 So.2d 332, 335 (La.1976) as called for by the Supreme Court in Anderson.
The trial court relied on the expert testimony of James Arceneaux in finding that 80% of the termite damage occurred prior to 1992 at a time when the | ^defendants would clearly have no liability.[4] Although one might reasonably infer otherwise from the testimony of plaintiffs contractor, Mr. Paddison, which testimony indicated no signs of damage prior to 1991 and heavy damage in 1995, we cannot say that the trial court’s conclusion in this regard was unreasonable, manifestly erroneous or clearly wrong. In reaching this conclusion, we note that the only properly qualified expert who testified at trial as to the age of the termite damage was Mr. James Arceneaux. Mr. Paddison admitted that he was not an expert in determining the age of termite damage. He further testified that he would probably defer to an expert on that issue.
The plaintiff contends that there is no basis for assigning comparative fault to him. In rendering the JNOV, the trial court did not assign any comparative fault to the plaintiff. Therefore, from the plaintiffs perspective, this matter is moot. However, in answering plaintiffs appeal, the defendants contend that the trial court was correct when it granted the JNOV based on an erroneous assessment of damages by the jury, but that the trial court, in effect committed an error of law when it failed to sustain the jury finding of 50% comparative fault. In other words, the defendants contend that the trial court’s authority to adjust the damage award pursuant to the JNOV does extent to the right to adjust the allocation of fault because the decision to grant the JNOV was not based on the allocation of fault. The defendants cite no authority in support of this contention. We are aware of none. We infer from Anderson, supra, that when a trial court decides to grant a motion for JNOV, it then becomes the responsibility of the trial court to review the award de novo, including the calculation of comparative fault. Moreover, although |7the defendants made a brief general conclusory statement saying that the record would support a finding of plaintiffs comparative fault, the defendants failed to argue or demonstrate that the trial judge’s failure to assign any fault to the plaintiff was manifestly erroneous or clearly wrong.
The plaintiff assigns as error the failure of the trial court to award damages based on his “loss of investment” theory. “Loss of investment,” assuming for purposes of argument only that plaintiff sustained such damages, is an item of special damages that must be specifically alleged. LSA-C.C.P. art. 861. Plaintiff made no allegations of loss of investment. Over and over again, plaintiffs petition and amended petition describe no damages other than “the cost of repairing the termite damage and of treating active termites, along with mental anguish and emotional distress.” We recognize that plaintiffs pleadings may be enlarged by evidence admitted without objection. LSA-C.C.P. art. 1154. But the trial court sustained the defendants’ objections to plaintiffs attempts to enlarge the record *9 in regard to the issue of “loss of investment.” We find no error in the refusal of the trial court to award “loss of investment” damages. See Harris v. Cole, 98-0174, 98-0175, 98-0176 (La.App. 1 Cir. 5/14/99); 732 So.2d 822.
For the foregoing reasons, we grant rehearing, vacate our original opinion to remand, and render judgment affirming the judgment of the trial court.
REHEARING GRANTED.
ORIGINAL OPINION OF THIS COURT TO REMAND VACATED.
JUDGMENT OF THE TRIAL COURT AFFIRMED.

. In his answer to the appeal, the plaintiff moved in the alternative for a devolutive appeal. As the issues raised by the plaintiff in connection with this appeal are limited to those raised in his answer to the appeal the outcome is the same regardless of how this Court looks at plaintiff’s appearance before this court, the issues raised remain the same.

. Plaintiff’s brief fails to raise the issue of gross negligence either expressly or impliedly. Plaintiff’s brief does not argue that any of the defendant's breaches of duty amount to gross negligence. Moreover, we find as a matter of law that none of the breaches of duty alleged to have been committed by the defendant prior to 1992 amount to gross negligence.

. In Pino, supra, 633 So.2d at 654, the First Circuit stated that:
The question before this court is whether, considering the evidence in the light most favorable to defendants Gauthier and R.P.M., the trial court was manifestly erroneous in concluding that reasonable men could not have found Gauthier 1 percent at fault and R.P.M. 34 percent at fault [as was found by the jury] in causing the accident. [Emphasis added.]
We find the Pino Court's reference to the manifest error standard of review when reviewing the trial court’s decision to grant the JNOV inconsistent with the quotation from Anderson which immediately precedes it stating that the criterion to be used in reviewing the initial determination to grant the JNOV is "do the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict.” According to the Anderson standard set by the Supreme Court, it would be closer to the mark to apply the manifest error standard in support of the jury’s verdict than in support of the decision by the trial court to grant the JNOV. As Anderson directs the reviewing court to "not evaluate the credibility of witnesses,” and that “all reasonable inferences or factual questions should be resolved in favor of the non-moving party” we conclude that the standard for sustaining the initial decision to grant the JNOV is probably higher than the manifest error standard. The language used in Anderson is very similar to the language employed by re *8 viewing courts when reviewing summary judgments under the old law when all inferences were resolved in favor of the non-moving party and no credibility determinations were made.

. The plaintiff does not contest the trial court’s finding that the defendants can be liable for gross negligence only prior to 1992.