803 So.2d 382 (2001)
Patrick Dale KEEL
v.
WEST LOUISIANA HEALTH SERVICES.
No. 01-0802.
Court of Appeal of Louisiana, Third Circuit.
December 12, 2001.
Rehearing Denied January 23, 2002.
*383 Todd A. Townsley, Townsley Law Firm, Lake Charles, LA, Counsel for Plaintiff/Appellee Patrick Dale Keel.
Chris James LeBlanc, Watson, Blanche, etc., Baton Rouge, LA, Counsel for Defendant/Appellant West Louisiana Health Services.
Court composed of ULYSSES GENE THIBODEAUX, BILLIE COLOMBARO WOODARD, and GLENN B. GREMILLION, Judges.
GLENN B. GREMILLION, Judge.
In this case, the defendant, Hospital Service District Number Two of Beauregard Parish d/b/a Beauregard Memorial Hospital and Beauregard Memorial Hospital Home Health Agency (collectively referred to as Beauregard), appeals the judgment rendered in favor of the plaintiff, Patrick Dale Keel. For the following reasons, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND
Patrick filed suit in July 1996, alleging that on December 6, 1996, he was negligently treated by Reginald Hoard, an employee of Beauregard, when Hoard allowed extremely hot water to cause first and second degrees burns to his upper thighs near the groin area.[1] Patrick was transported to the emergency room where he received antibiotic treatment (in the form of a cream) and was discharged later that same day. After a bench trial on the merits, the trial court found in favor of Patrick and awarded him $25,000 in general damages. Beauregard now appeals and assigns as error the trial court's award of *384 $25,000 in general damages when Patrick 1) suffered no pain, 2) was only treated with antibiotic cream for six days, 3) had his bandages removed on December 26, 1996, and 4) returned to normal after six weeks.

LAW AND DISCUSSION
In its reasons for judgment, the trial court found that Hoard inadvertently bumped the water faucet handle causing the hot water to burn Patrick. It further found that, although Patrick could not feel any actual pain, he viewed the injury and had to suffer the consequences and inconveniences of treatment and suffered substantial anguish and trauma that continues each time he has to shower. Therefore, it awarded him $25,000 in general damages.
At trial, the following evidence was adduced. Kelvin Ray Vander, Patrick's childhood friend, testified that he has been in Patrick's bathroom numerous times and observed that the shower is controlled by one handle that moves left to right in order to adjust the temperature. He went on to state that a nurse had called the day of the accident and advised him that Patrick has been scalded with water. He stated that he immediately went to Patrick's house where he observed burns on his upper thighs and upper seating area, a burn on his hand, and that his belly was "real reddened." He stated that the burned areas were blistered and varied from the size of a quarter to the size of a half-dollar.
Dorman Keel, Patrick's brother, testified that he is employed as a personal care attendant at the Southwest Louisiana Independent Center. He stated that he puts Patrick to bed seven days a week and wakes him four days of the week. He further testified that home health aides wake Patrick up the rest of the week. Dorman testified that when he arrived at the hospital later that evening he observed burns that were about three and a half to four inches by about six inches on both hips, a burn spot on his stomach, and a blister on his left hand. He testified that due to a previously planned hunting trip, he had to take Patrick out in the woods with him and care for him there including changing his bandages morning and night and applying antibiotic creme to the wounds. Dorman went on to testify that Patrick enjoys hunting and is able to hunt with a self-designed deer stand that supports his rifle. He further stated that, following the accident, Patrick had cold chills, sweats, and muscle spasms.
Dorman also stated that Patrick cannot sleep on his back or stomach because it could impair his ability to breath and, therefore, rotates the days he sleeps on each side. He stated that on Sunday, Tuesday, and Thursday nights Patrick sleeps on his left side and on Friday, Saturday, Monday, and Wednesday night he sleeps on his right side. He stated that for approximately six weeks after the accident Patrick had to sleep on a doughnut cushion and had to be re-positioned every three hours in order to prevent sores. He also stated that Patrick has permanent discoloration scars on his hips.
Larry Keel, Patrick's cousin, testified that he sees Patrick four to five times per month, but calls every day or every other day. He went on to state that he has been employed as a plumber off and on since 1975, and that Patrick had never reported any problems with the water heater or shower; but, that after the accident, he asked him to turn down his water heater because he was afraid of being burned again. Larry testified that he adjusted it from 120 degrees to 95 degrees, but stated that the 120 degree setting would be the most common or frequent setting. He *385 also stated that he has seen the discoloration scars on Patrick's body.
Hoard, a certified nursing assistant employed by Beauregard, testified that Patrick was burned while he was giving him a shower. He denied leaving the shower head in Patrick's lap while he washed the top of his body and instead said he handed it to Patrick so that he could face the shower head down toward the floor and away from his body. He conveyed his memory of the events as follows: he first noticed a "red spot" on Patrick's leg and informed him of such; Patrick responded that perhaps the water had become to warm; Hoard immediately picked up the shower head and felt the water finding that it "didn't feel real hot;" Patrick informed him to move the lever because it might have gotten bumped; Hoard moved the lever to a spot agreed upon by Patrick, tested the temperature of the water on himself and Patrick, and proceeded with the bath. He further stated that Patrick had not touched the control, though he seemed to deny ever being in a position to accidentally bump the lever to a hotter temperature.
Patrick testified that Hoard laid the shower head on his left leg while standing directly in front of him and facing him with Hoard's back facing the shower wall containing the controls. He stated that after Hoard moved from that position he noticed that the lever position had moved toward the right which made the temperature hotter. Patrick testified that he informed Hoard that the lever had moved and that Hoard first moved the lever back to the middle then checked the water temperature on himself and then Patrick. He testified that after the shower, when Hoard was drying him off, the skin on his left hip began peeling off and that he had been burned on his left and right hip, his stomach, and his finger. He went on to state that, shortly thereafter, he noticed his skin starting to blister and Hoard called the nurse who advised him to go the emergency room where he was treated for second degree burns. Patrick further stated there was no one to care for him that evening due to the aforementioned hunting trip that he had planned to attend. He went on to state that he is alerted that something is wrong with his body when he has cold chills, sweating, and muscle spasms, and that he experienced these symptoms following the accident for four to six weeks. He also stated that the most important thing he liked to do was go hunting, that he could not do that following the accident, and he missed the height of hunting season that year. He testified that after a six week period he was "pretty much back to normal."
Dr. Lee Schwalben, a member of the medical review panel and an internal medicine specialist, testified that he has treated numerous quadriplegic patients over the years. He stated that the panel unanimously found that Hoard had breached the standard of care by failing to safely assist Patrick in his shower. He further stated that the panel felt that the water was running on Patrick unmonitored or else the first and second degree burns would not have occurred. He described the pain indicators Patrick experienced via chills, sweating, and spasms as normal in quadriplegics because the nervous response is diverted due to the injured spinal cord. He stated that experiencing these symptoms for a period of four to six weeks was normal and reasonable, but that the panel found that Patrick would not suffer any permanent disability.
Dr. Randall Duplechein, Patrick's treating physician, treated Patrick at a follow-up visit on December 11, 1996. He described Patrick's burns as first and second degree burns that appeared in photographs *386 to be four to five inches by three inches on the right side and about one inch by one inch on the left. He stated that a first degree burn was "like a sunburn" where the skin is just red and that a second degree burn is where the skin blisters. He testified that he instructed Patrick to apply the antibiotic appointment twice a day for three to five days, keep the wounds clean, and then let them dry out. Dr. Duplechein went on to say that the burned area will form a scab that eventually comes off. He also stated that second degree burns often leave a blemish in form of discoloration and, occasionally, there may be some amount of scarring. Dr. Duplechein testified that quadriplegic persons can have hypersensitive reactions to pain such as sweating that would be a natural pain reaction for a quadriplegic. He also stated, and the medical records reveal, that Patrick was already taking pain medications for symptoms non-related to this incident; thus, Dr. Duplechein did not feel the need to prescribe any additional medications for pain.

GENERAL DAMAGES
General damages include an award for the victim's pain and suffering, and as such are intrinsically speculative and not subject to mathematical certainty. Wainwright v. Fontenot, 00-0492 (La.10/17/00); 774 So.2d 70. We review the trial court's general damage award using the abuse of discretion standard set forth in Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). The trial court is afforded much discretion in independently assessing the facts and rendering an award because it is in the best position to evaluate witness credibility and see the evidence firsthand. Anderson v. New Orleans Pub. Serv., Inc., 583 So.2d 829 (La. 1991). The award should be based on the facts and circumstances of the particular case. Id. Only if we find that the trial court abused its discretion, may we lower or raise the award and resort to prior awards to the extent that is reasonably within our discretion. Id.
Based on all the evidence, and while we believe the award to be on the high end, we cannot say that the trial court abused its discretion in awarding Patrick $25,000 in general damages. While it is true that he did not feel the water burning him, he testified that he experienced chills, sweating, and muscle spasms as a result of the burn. Drs. Schwalben and Duplechein both testified that this sort of pain reaction was common in quadriplegics.
For six weeks, Patrick had to endure the discomfort of having to sleep on a doughnut cushion to prevent the burned areas from being rubbed raw. Moreover, his normal sleeping schedule and patterns were disturbed as a result of the injury. He had to wear loose baggy clothing that would not interfere with the wounds. Patrick also had residual discoloration and scarring from the burns. Therefore, we find this assignment without merit and affirm the findings of the trial court.

CONCLUSION
The judgment in favor of the plaintiff, Patrick Dale Keel, is affirmed. All costs of this appeal are assessed against the defendant-appellant, Hospital Service District Number Two of Beauregard Parish d/b/a Beauregard Memorial Hospital and Beauregard Memorial Hospital Home Health Agency.
AFFIRMED.
NOTES
[1] Patrick has been a quadriplegic since he was a teenager as a result of diving accident and has since required nursing assistance to get in and out of bed, shower, dress, and get into his wheelchair.