813 So.2d 562 (2002)
Mary Jo BOWIE, et al.
v.
Ronald YOUNG, et al.
No. 01-0715.
Court of Appeal of Louisiana, Third Circuit.
March 20, 2002.
*564 Edward Paul Landry, Landry & Watkins, New Iberia, LA, for Despino's Tire Service, Inc.
Winston Wade, Riddick, Sr., Stephen Miller Irving, Riddick & Irving, Baton Rouge, LA, for Mary Jo Bowie.
Michael Thomas Pulaski, Robert William Maxwell, Pulaski, Geiger & Laborde, Covington, LA, for Ford Motor Company.
Patrick Manning Wartelle, Roy, Bivins, Judice, & Henke, Lafayette, LA, for Prior Manufacturing, Inc.
Michael J. Remondet, Jr., Jeansonne & Remondet, Lafayette, LA, for TIG Insurance Company, Ronald Young and O.S. Johnson Dirt Contractors, Inc.
Court composed of JOHN D. SAUNDERS, BILLIE COLOMBARO WOODARD, OSWALD A. DECUIR, MARC T. AMY, and ELIZABETH A. PICKETT, Judges.
SAUNDERS, Judge.
The Plaintiff seeks recovery related to an automobile accident that rendered her a paraplegic. Following trial, a partial judgment *565 notwithstanding the verdict was granted by the trial court, increasing the figures awarded for general damages and those for future medical expenses. The Defendants appeal the final judgment, arguing that the JNOV was improperly granted, that the principles of res judicata prohibited the entry of judgment due to a prior settlement agreement, and, finally, that certain elements of the general damages award are duplicative. The Plaintiff answers the appeal and seeks a further upward adjustment of the medical damages awarded by the trial court. She also asks that the fault be reapportioned to remove that percentage assigned to an unnamed actor and questions whether defense expert testimony should have been admitted. For the following reasons, we increase the award for future medical expenses, eliminate the previously dismissed Defendants from the apportionment of fault, reapportion the fault, and affirm the judgment as amended.

Factual and Procedural Background
The general background of the accident at issue is clear from the record and appears to be generally undisputed by the parties. On the morning of December 16, 1997, the Plaintiff, Mary Jo Bowie, approached a road construction site on Highway 10 near Palmetto, Louisiana, where a worker flagged her to stop. She did so. Shortly thereafter, her vehicle was hit from the rear by a truck driven by Ronald Young, an employee of O.S. Johnson Dirt Contractors, Inc., the construction company working the site. Mr. Young, who was admittedly speeding in the construction zone, alleged that as he was approaching the area, he tried to apply the brakes to the company truck he was driving, but that the pedal went to the floor. As a result of the accident, Ms. Bowie sustained a fracture of the thoracic spine, resulting in paralysis from the nipple area down.
The Plaintiff filed suit in April 1998, naming Young, O.S. Johnson, and O.S. Johnson's excess insurer, TIG Insurance, as Defendants.[1] Third-party demands were filed by the Defendants with Prior Remanufacturing, Inc. ("Prior"), Genuine Parts Company ("Genuine"), and Despino's Tire Service ("Despino's") named as third party defendants.[2] These third party defendants were ultimately dismissed on summary judgment.
The matter proceeded to trial, with the jury returning a verdict in favor of the Plaintiff. Mr. Young was apportioned fifty percent of the fault and his employer, thirty percent. The remaining twenty percent of fault was assigned to "Any other person or legal entity." Monetary damages were awarded as follows:

Physical pain and suffering
(Past and Future) $ 250,000.00
Mental pain and suffering
(Past and Future) $ 250,000.00
Past medical expenses $ 219,047.19
Future medical expenses $2,100,952.81
Past loss of earnings $ 35,000.00
Future loss of earnings/loss of earning
 capacity $ 145,000.00
Disfigurement and physical disability $ 250,000.00
Loss of enjoyment of life $ 250,000.00

In sum, general damages totaled $1,000,000.00. Loss of consortium awards were also made to Ms. Bowie's two sons.
Following trial, the Plaintiff filed a Motion for Judgment Notwithstanding the Verdict, or, Alternatively For a New Trial *566 and for Additur. She sought an increase in general damages, future medical expenses, and a reapportionment of fault to reflect a seventy-percent apportionment to Mr. Young and a thirty-percent apportionment to O.S. Johnson. She requested a new trial. The Defendants filed a Motion for New Trial; Alternative Motion for Partial Satisfaction of Judgment, in which they proposed a modification to the judgment reflecting credit for settlement funds paid by Northern Insurance Company prior to the trial and inclusion of TIG as a Defendant. Alternatively, the Defendants asked for the entry of a pretrial satisfaction of judgment for Northern Insurance.
A hearing was held on the motions, after which the trial court rendered extensive reasons for ruling. The trial court noted that the Plaintiff filed a partial satisfaction of judgment confirming the $2,000,000.00 credit to Northern Insurance for the pretrial settlement and that the parties agreed to amend the judgment to include TIG as a defendant. Due to these agreements, the Defendants' motion for new trial was withdrawn. As for the motion filed by the Plaintiff, the trial court granted the motion for judgment notwithstanding the verdict in part. As for general damages, the trial court increased the figure awarded for mental pain and suffering to $750,000.00, the award for disfigurement to $1,000,000.00, and the award for loss of enjoyment of life to $1,000,000.00. In sum, the general damages were increased from a total of $1,000,000.00 awarded by the jury to $3,000,000.00. Additionally, the trial court increased the award of future medical expenses to $2,600,000.00. The court declined to alter the apportionment of fault.[3]
The Defendants appeal the partial granting of the JNOV, setting forth the following issues for review:
1. Whether the trial court erred in granting a JNOV increasing the Plaintiff's general damages and future medical expenses.
2. Whether the trial court erred in failing to dismiss Ronald L. Young and O.S. Johnson Dirt Contractors as a result of the settlement they entered into with Plaintiff insulating them from any further liability.
3. Whether the trial court erred in failing to grant an Exception of No Cause of Action and/or Res Judicata in favor of Ronald L. Young and O.S. Johnson Dirt Contractors.
4. Whether the jury and trial court erred in making an award for hedonic damages, for loss of enjoyment of life, disfigurement and physical disability.
The Plaintiff answers the appeal, arguing that the trial court made the following errors of law:
I. The Trial Court Committed An Error of Law In Admitting Evidence of Fault of Third Parties Not Before the Court After Granting Summary Judgments As To Claims That Those Parties Were At Fault.
II. The Assignment of Fault to Parties Not Before the Court Is Manifestly Erroneous.
III. The Opinion of Defense Expert Jeffrey Abrams Should Have Been Excluded under Daubert v. Merrill Dow Pharmaceuticals ....
IV. The Trial Court Award for Future Medical Expenses Is Inadequate to Provide the Attendant Care That The Trial Court Found That Plaintiff Needs.
We first discuss those assignments related to findings of liability before turning *567 to consideration of issues related to damages.

Discussion

Effect of Pretrial Settlement
As noted above, in addition to Young and O.S. Johnson, the Plaintiff named Northern Insurance, a primary insurer, and TIG Insurance Company, an excess policy provider, as Defendants. Prior to trial, the plaintiff, along with Young, O.S. Johnson, and Northern, reached an "Agreement." As part of the agreement, Northern tendered the limits of its two $1,000,000.00 policies, plus interest, in favor of the plaintiff. The document, which is dated July 23, 1999, indicates that the Plaintiff agreed to dismiss Northern and O.S. Johnson employees other than Young, but that she reserved the right to pursue recovery against TIG as the excess insurer. The agreement also contains contingencies for recovery against the insureds in the event that any judgment exceeded the $6,000,000.00 limits of the excess policy issued by TIG.
On March 9, 2000, the Defendants filed Exceptions of Res Judicata and No Cause of Action, Improper Joinder, and, In the Alternative, Motion for Summary Judgment. The Defendants alleged that, due to the settlement between Ms. Bowie and Northern, "that all liability of O.S. Johnson, Inc. and Ronald Young have been compromised and the claims prescribed against them should be dismissed." The Defendant sought a judgment of dismissal as to O.S. Johnson and Young, as the settlement agreement "does not hold O.S. Johnson, Inc. and Ronald Young personally liable for any amounts, then, as a result, they are improperly joined as Defendants in this litigations." Following a hearing, the trial court denied the exceptions. A writ application to this court questioning the determination was denied, with the following language: "WRIT DENIED. We find no error in the trial court's ruling." See Mary Jo Bowie, et al. v. Ronald L. Young, et al., 00-671 (La.App. 3 Cir. 7/20/00)(an unpublished writ decision).
As is obvious from the fact that a panel of this court previously addressed this issue in denying the Defendants' writ application, we consider whether it is appropriate to address this assignment of error or whether review is affected by the "law of the case doctrine." The law of the case principal is a discretionary guide which functions to avoid re-litigation of the same issue, to promote consistency of results in the same litigation, and to promote efficiency and fairness to the parties by affording only one opportunity to argue and decide the matter. Louisiana Land and Exploration Co. v. Verdin, 95-2579 (La.App. 1 Cir.); 681 So.2d 63, writ denied, 96-2629 (La.12/13/96); 692 So.2d 1067, cert. denied, 520 U.S. 1212, 117 S.Ct. 1696, 137 L.Ed.2d 822 (1997). In theory, the principle is aimed to make binding the force of a trial judge's earlier ruling during later stages of the trial, to give a conclusive effect to appellate rulings at the trial level on remand, and to prevent the appellate court from reconsidering its own rulings of law on a subsequent appeal in the same case. Id. We are of course mindful that the doctrine is discretionary and inapplicable in the event of palpable error or if manifest injustice would result from its application. Id.
In our consideration of this doctrine, we point out that the Defendants' argument in this regard is indistinguishable from the question presented to the trial court on the exceptions and again to this court in the writ application. In fact, comparison of the Defendants' discussion under this assignment of error and that in the memorandum filed with the trial court in support of the exceptions reveals the same argument *568 and same citation to articles, statutes, and case law involving the doctrine of res judicata, transaction and compromise, and the assignment of rights. Although ably argued, a plain reading of the settlement agreement indicates the denial of the exceptions and this court's subsequent review is without error. Thus, by operation of the law of the case doctrine, we decline review of this assignment.

Evidence of Nonparty Fault
In her first assignment of error, the Plaintiff argues that the trial court erred in allowing the admission of evidence related to the fault of parties not before the court. As explained above, the Defendants filed Third-Party Demands against Prior, Genuine, and Despino's. The demands related to theories that the truck driven by Young experienced a master cylinder failure or that brake service performed on the truck failed to detect or correct a hazardous brake situation. These third party defendants were dismissed by summary judgments entered in their favor. The decisions to grant the motions for summary judgment were affirmed on appeal. See Bowie v. Young, 00-1199 (La.App. 3 Cir. 2/7/01); 786 So.2d 976, writ denied, 01-672 (La.4/27/01); 791 So.2d 639; Bowie v. Young, 00-1527 (La. App. 3 Cir. 2/28/01); 786 So.2d 978, writ denied, 01-825 (La.4/27/01); 791 So.2d 640. Prior to the affirmations, however, the matter proceeded to trial.
At a pretrial hearing, the trial court, uncertain of whether the summary judgments would be upheld on appeal, permitted the introduction of evidence of third party fault. Although the court permitted the introduction of the theories related to nonparty actors, use of the nonparty business names was prohibited. On appeal, the Plaintiff argues that any introduction of this type of evidence was erroneous as the third party actors were found to not be liable in the summary judgments. Succinctly, the Plaintiff asserts in her brief that: "Evidence of fault of Prior, Genuine Parts and Despino's became irrelevant once Defendants asked for and the Trial Court granted an order that the judgments be designated as final." Because these parties were dismissed on summary judgment, the Plaintiff contends that the only actor at issue was Ford, the manufacturer of the truck, who was not the subject of a Third Party Demand and about which there was little evidence.
Upon review, we find that the trial court should not have allowed the evidence of fault of Prior, Genuine, and Despino's for the two following reasons. First, once the trial judge dismissed the third parties by granting their summary judgment, this final judgment became the law of the case. In effect, the trial judge dismissed the parties because they were not negligent. This judgment was subsequently upheld on appeal. As such, it was improper for the judge to admit similar evidence later in the proceedings to again establish their negligence. This error resulted in re-litigation of the same issue, inconsistent results in this case, and our reconsideration of a previously reviewed matter. As previously stated, the law of the case doctrine is designed to prevent these types of problems. This doctrine is applicable to this case. For this reason, this evidence should not have been admitted.
Second, after the third party defendants were released through the summary judgments, the trial court was faced with the difficult balancing between its recognition that the Plaintiff would be unable to recover from these Defendants and the broad, permissive language of La.Civ.Code art. 2323. Article 2323 provides:
A. In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all *569 persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a non-party, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.
B. The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.
C. Notwithstanding the provisions of Paragraphs A and B, if a person suffers injury, death, or loss as a result partly of his own negligence and partly as a result of the fault of an intentional tortfeasor, his claim for recovery of damages shall not be reduced.
(Emphasis supplied.)
After reviewing the statutory language, the trial court allowed the fault of the dismissed parties reasoning that fault should be apportioned to all parties and nonparties. Thus, fault was apportioned 50% to Mr. Young, 30% to his employer, and 20% to non-parties. In deciding if this is correct, it is crucial for us to interpret this article to determine whether the legislature intended "all parties and nonparties" to include a previously dismissed party whom the court determined was not negligent.
First, the starting point for the interpretation of an article is to analyze the actual language of the article. SWAT 24 Shreveport Bossier, Inc. v. Bond, 00-1695 (La.6/29/01); 808 So.2d 294. Upon review of the language, when the law is clear and unambiguous and its application does not lead to absurd consequences, it shall be applied as written and no further interpretation may be made in search of legislative intent. La.Civ.Code art. 9. However, when the law is susceptible to different meanings, "it must be interpreted as having the meaning that best conforms to the purpose of the law." La. Civ.Code art. 10. Further, "the object of the court in construing a statute is to ascertain the legislative intent and, where a literal interpretation would produce absurd consequences, the letter must give way to the spirit of the law and that statute construed so as to produce a reasonable result." SWAT 24 Shreveport Bossier, Inc., 00-1695; 808 So.2d at 302.
Our examination of the language reveals that this article requires consideration of the fault of all persons causing or contributing to the injury regardless of whether the person is a party or nonparty to the action. Although the article is silent regarding dismissed, non-negligent Defendants, we believe that it is illogical to consider these parties in the allocation of fault when it has previously been determined that they did not cause or contribute to the injury as required by the article. Further, such a reading of the article would result in the possibility of penalizing the Plaintiff by forcing the allocation of fault to non-negligent previously dismissed parties thereby reducing her recovery. Such an application of the law would be absurd. The very nature of Louisiana tort law centers around the principle that every person is responsible for the damage he causes by his negligence. La.Civ.Code art. 2316. Conversely, one may logically *570 deduce that a non-negligent party is not responsible for damages that he does not cause. Similarly, when the court determines that a party or nonparty is not negligent, he may not be considered in the allocation of fault, and subsequent evidence may not be admitted to establish his fault. Having previously determined that the third parties were not negligent, the trial court committed manifest error in later admitting evidence which suggested negligence on their behalf. As such, the Plaintiff's first assignment of error is meritorious.
Similarly, these third parties should not have been included in the apportionment of fault; thus, the trial court's apportionment of fault was manifestly erroneous. Louisiana law provides that if the appellate court determines that an apportionment of fault by the trial court is clearly erroneous, it should raise or lower it to the highest or lowest point reasonably within the trial court's discretion. Clement v. Frey, 95-1119 (La.1/16/96); 666 So.2d 607. As such, we must re-apportion fault in this matter. Considering the totality of the circumstances, we must eliminate all other actors except Ford. However, upon review of the record, there is insufficient evidence to assess any fault to Ford. This leaves only Mr. Young and his employer to be considered in the apportionment of fault. After reviewing the record, the fault is re-apportioned 70% to Mr. Young and 30% to his employer.

Expert Testimony
In her third assignment of error, the Plaintiff argues that the trial court erred in permitting the testimony of Jeffrey Ray Abrams, the witness who opined that the vehicle suffered a master cylinder failure and who was accepted by the court as an expert in the field of general auto mechanics. However, in light of our findings with regard to comparative fault, the Plaintiff's third assignment of error is moot. Thus, we will not consider it.
We now turn to the parties' concerns regarding the damages awarded.

Judgment Notwithstanding the Verdict
The mechanism by which a judgment notwithstanding the verdict may be granted is provided by La.Code Civ.P. art. 1811. In describing the circumstances under which a JNOV is appropriate, the Louisiana Supreme Court has explained that the procedure is to be used only when the facts and circumstances favor one party so overwhelmingly that reasonable men could not arrive at a contrary verdict. Anderson v. New Orleans Public Service, 583 So.2d 829. It is inappropriately used in cases in which the evidence merely preponderates in favor of the moving party. Id. Also, we are mindful that the motion must not be granted if there is evidence in opposition that is of such quality and weight that it would permit "reasonable and fairminded men in the exercise of impartial just" to reach different conclusions. Id. at 832. Finally, the court cautioned that, in weighing whether a JNOV is appropriate, the court should not weigh witness credibility and should resolve all reasonable inferences/factual questions in favor of the non-moving party. Id. See also Davis v. Wal-Mart Stores, Inc., 00-0445 (La.11/28/00); 774 So.2d 84.
On review, an appellate court employs a two-part inquiry when considering whether a JNOV is appropriate. Davis, 99-0445; 774 So.2d 84. First, applying the same criteria as the trial court, the appellate court must determine if the trial court erred in granting the motion. Id. Next, if the appellate court determines that the standard was correctly applied to the jury verdict at the trial level, the appellate court must then review the JNOV *571 granted using the manifest error standard of review. Id.
We bear this standard in mind as we turn to consideration of the parties' arguments regarding the JNOV entered on the general damages and the award for future medical expenses. Again, the Defendants question the propriety of the JNOV with regard to the grant of the JNOV in its entirety, while the Plaintiff asks this court to increase the amount awarded for future medical expenses. We consider these areas separately.

General Damages
The jury awarded a total of $1,000,000.00 in general damages to the Plaintiff for her injury. In granting the partial JNOV, the trial court raised this figure to a total of $3,000,000.00. The increase was comprised of greater awards for mental pain and suffering, disfigurement, and loss of enjoyment of life. In oral reasons for the ruling, the court referenced Ms. Bowie's active lifestyle prior to the accident, mentioned her employment as a teacher's assistant, her desire to become a coaching assistant, and her life with her two sons. Focusing its attention on the total change in her life after the accident, the trial court considered the jury award and stated, in part:
[T]he court finds that reasonable jurors could not arrive at a contrary verdict and reasonable men could not reach different conclusions as to the following awards in the verdict which were grossly inadequate, and there were four areas; specifically, the mental pain and suffering of which $250,000.00 was awarded, the future medical expenses of $2,100,952.81, the disfigurement and physical disability $250,000.00 award, and the loss of enjoyment of life of $250,000.00. The court is going to address each one of those areas specifically.
On the issue of mental pain and suffering... She is not paralyzed mentally. Physically, she's paralyzed from the chest on down. One cannot imagine the constant, perpetual torment and mental anguish endured by Ms. Bowie during her every conscious moment thinking that this was somehow a dream and that she would be able to walk again. Well, tragically, it's not a dream. It is a reality, and Ms. Bowie will have to revisit and experience that reality every day of the rest of her life. $250,000.00 is grossly inadequate to compensate her for that element of damage.
. . . .
Regarding disfigurement and physical disability, an award of $250,000.00 for disfigurement and physical disability for a T-4 thoracic level paraplegic is grossly inadequate. Reasonable minds could not differ on such an award of a young lady paralyzed from the chest down with the inability to catheterize herself or move from her wheelchair to her bed or vice versa without assistance due to her short arms and weight. The law requires that you take your victim as you find her. Never being able to walk, no feeling from the chest down, no control over your bowels, and the inability to even transfer yourself from a wheelchair to a bed or from one station to another, that is the most extreme form of disability which warrants a greater award than $250,000.00.
Finally, loss of enjoyment of life. Ms. Bowie loved life. Her two sons, her students at North Central High School, the time she spent with her family, that was her life. All of that has permanently changed now. Of course, she still loves her sons and family and friends, that cannot be taken away from her by paralysis; but, this accident not only took from her her bodily function from *572 the chest downand she said it better than I could ever say it, and I will use her words in that regard. This accident not only took from her her bodily function from the chest down, but more than that, it killed her spirit. She can't cut up and play ball any more with her family and students. In all sincerity and practicality, she'll never be a coach. In fact, she'll never have use of her body again from the chest on down. She'll never be able to do and enjoy the basic little things in life which keep a person going. Of all the things she lost in this accident, and there were many, perhaps most importantly she lost her spirit. And when you take one's spirit, you have taken one entirely. That is the epitome of the loss of enjoyment of life. The jury award for that loss is likewise inadequate.
The court went on to increase the general damages to a total of $3,000,000.00.
Employing the review described by the supreme court in Anderson and Davis, we find no merit in the Defendants' contention that the trial court erred in its granting of the JNOV insofar as general damages. Reasonable minds could not find that the $1,000,000.00 awarded by the jury for general damages was sufficient. Clearly, even if only part of the factors present in the record existed, the award would be wholly insufficient. The jury was presented with evidence that the Plaintiff, a forty-one year old, single mother of two at the time of the accident, sustained a life-changing injury. As pointed out by the Defendants, Ms. Bowie's testimony at trial indicated a willingness to make as much of her life as possible. However, Ms. Bowie appears to be realistic about her situation and acknowledges that her "spirit is broken."
Testimony indicated that due to the circumstances of her build and the high level of her paralysis, it is unlikely she will return to an active lifestyle. Instead, it appears her daily routine will be consumed with the performance the fundamental tasks of caring for herself. Although the question of how much attendant care she will require was at issue at trial and is again at issue on appeal, it is clear that Ms. Bowie will never be able to perform personal, even basic hygienic tasks, herself. As a result of her condition, Ms. Bowie has undergone a colostomy and requires catheterization. She has suffered greatly from severe decubitus ulcers, a condition which has required hospitalization and will likely recur throughout her lifetime according to medical testimony. It is unclear whether she will be able to drive again. Even at issue is whether, because of her heavy body type and what have been described as "congenitally" short arms, she is dependent on others for routine shifts and transfers from her wheelchair to her bed. In every sense, Ms. Bowie is dependent on others.
It is incorrect to argue, either before the trial court or this court, that a $1,000,000.00 judgment is supported by the record considering the realities of Ms. Bowie's situation. Thus, the first part of the review enunciated in Anderson is complete as we find no error in the trial court's determination that a JNOV was appropriate insofar as general damages were awarded. Next, according to the standard of review, we consider whether the $3,000,000.00 award was manifestly erroneous.
Damages awarded after a motion for JNOV is granted are subject to the following guidelines:
Once a trial court has concluded that JNOV is warranted because reasonable men could not differ on the fact that the award was either abusively high or abusively low, it must then determine what is the proper amount of damages to be *573 awarded. In making this determination, the judge is not constrained as the courts of appeal are to raising (or lowering) the award to the lowest (or highest) point which is reasonably within the discretion afforded the court. Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1976).
. . . .
The appellate court, in determining whether the trial court erred in granting the JNOV as to quantum, once again uses the criteria set forth in [Scott v. Hosp. Serv. Dist. No. 1, 496 So.2d 270 (La.1986)], i.e., could reasonable men in the exercise of impartial judgment differ as to the fact that the jury award was either abusively high or abusively low. If the answer is in the affirmative, then the trial court erred in granting the JNOV, and the jury's damage award should be reinstated. On the other hand, if the answer is in the negative, then the trial court properly granted the JNOV, and its damage award based on its independent assessment of the damages is the judgment of the trial court which is reviewed on appeal under the constraints of Coco[v. Winston Industries, Inc., 341 So.2d 332 (La.1976)].
Anderson, 583 So.2d at 833-34.
Now reviewing the quantum found to be appropriate by the trial court under the Coco standard set forth above in the excerpt from Anderson, and due to the circumstances of Ms. Bowie's condition set forth above, we do not find any abuse of the trial court's vast discretion, insofar as the question before the court is whether the $3,000,000.00 award is excessive.[4]
We note here that we find no abuse of discretion whether we examine the general damages award as a whole, or whether we consider the quantum of the individual awards for mental pain and suffering, disfigurement, and loss of enjoyment of life. Neither are we persuaded by the defendants' final argument that the awards for loss of enjoyment of life and disfigurement and physical disability are part and parcel of the awards for physical and mental pain and suffering and must be reversed. While arguably true in some situations, they cannot be said to be the duplicative in this case. The general damages awarded here are obviously in the low range of those possibly acceptable. If these portions of the award were to be reversed, those remaining would necessarily be increased. As stated above, we have reviewed the general damages as a whole and concluded that the award must be affirmed. Consequently, this assignment of error is without merit.

Medical Expenses
With regard to future medical expenses, the trial court found the $2,100,952.82 awarded by the jury inadequate and raised that figure to $2,600,000.00. In finding the JNOV warranted in this regard, the trial court stated:
On the issue of future medical expenses, on the surface and looking at a cold record, an award of $2,100,952.81 for future medical expenses may seem to be an adequate award; but, when you analyze Ms. Bowie's condition and situation, it too is inadequate taking into account the fact that the evidence overwhelmingly shows that Ms. Bowie will need 24 hour care plus nursing assistance and supervision for the rest of her life notwithstanding perpetual catheterization of some sort and her propensity *574 for recurring decubitus ulcers. Ms. Bowie has a life expectancy of between 25 and 30 years. It is undisputed that Ms. Bowie has already had two bouts with decubitus ulcers, the last of which she nearly died from. Her last hospitalization was for an extended period of time and at a considerable expense. The medical testimony undisputedly reveals that the best way to prevent the reoccurrence of decubitus ulcers is adequate care and periodic nursing assistance and you cut short the day careif you cut short the nursing and rely on day care, the expose to the decubitus ulcers goes up; but, yet, there are limits as to an award in this matter. The jury award for future medical expenses cannot adequately compensate Ms. Bowie for both the expense of round the clock care with required periodic nursing assistance and supervision, for permanent catheterization and the prevention of decubitus ulcers. The record undisputedly indicates that Ms. Bowie has a history of decubitus ulcers which require hospitalization and surgery. When you add the future expense for catheterization and the prevention of decubitus ulcers to the cost of round the clock care along with the serious potential for future decubitus ulcers and the future expense therefrom, the jury award for Ms. Bowie's future medical expenses and long term care is grossly inadequate.
. . . .
... The jury's award for future medical expenses is increased from $2,100,952.81 to $2,600,000.00.
Both parties have appealed the JNOV with regard to the award for future medical expenses. The Defendants contend that the lower figure awarded by the jury is supported by the record and inappropriate for amendment by JNOV. The Plaintiff contends that the trial court's increase of $500,000.00 was insufficient and must be raised to a figure more in line with her own expert's testimony.
Both parties presented life care plans for their respective positions. The opinions offered by the two experts were substantially similar. The significant area of divergence was that of attendant care. They differed on the number of hours per day that would be required and the degree of skill that will be necessary for the attendant to possess.
The figure awarded by the jury and the trial court on the JNOV was less than the figure presented by the Plaintiff's life-care specialist and economist, but more than that offered by the Defendants' experts. The Defendants present the question as one involving credibility determinations. This type of determination is, of course, inappropriate when determining whether to grant a JNOV. See Davis v. Wal-Mart Stores, Inc., 00-445 (La.11/28/00); 774 So.2d 84. Because, the Defendants argue, this type of choice was required for the trial court to raise the figure awarded, the JNOV must be reversed. We disagree.
What is clear from the Defendants' life care plan expert and the medical evidence presented in support of their position is that the quality/quantity of care proposed and the amount of damages said to provide for the necessary care are, as a matter of law, insufficient. There is no credibility determination to be made. As stated by the trial court, it is clear the Plaintiff will require twenty-four hour care, this was testified to by her physician. To rely, as the defendants do, on the Plaintiffs' statements that she is satisfied with the level of care she currently receives and the fact that family members may be available to assist her is opportunistic, to say the least. The Defendants may not gain a windfall simply because cheaper, less professional help than that required may be available. *575 It is clear from the record Ms. Bowie is entitled to, and needs, twenty-four hour, professional care. She should not be made to accept less than is required and advised by health care professionals simply because she states on the stand that she is content with her services as they are. There is strong indication that she may suffer from less infection and ulcer-related complication, if attended by professionally-trained caretakers. Common sense also dictates the inescapable conclusion that professional care givers will provide better care than well intentioned but untrained volunteers.
It is apparent, that even considering the lowest estimate of life expectancy in the record, 25.82 years, the $2,600,000.00 awarded in the JNOV is insufficient.[5] This is so considering the all-consuming care that is required. According to the Plaintiffs physicians, Ms. Bowie will require twenty-four hour care. The Plaintiffs economist calculated the cost of this care, twenty-four hour daily care with twelve hours of LPN care, and arrived at the figure of $6,217,067.00. This figure, not the highest proposed by the Plaintiff, appears to provide the care most consistent with Ms. Bowie's apparent needs and those recommended by her physicians. Accordingly, we recast that portion of the judgment relating to the award of future medical expenses in the amount of $6,217,067.00.

DECREE
For the foregoing reasons, the judgment of the trial court entering future medical expenses in favor of the plaintiff, Mary Jo Bowie, in the amount of $2,600,000.00 is amended to reflect an increase in that award to $6,217,067.00. In addition, the fault is re-apportioned 70% to Mr. Young and 30% to his employer. In all other respects, the judgment is affirmed.
AFFIRMED AS AMENDED.
AMY, J., concurs in part and dissents in part and assigns written reasons.
AMY, J., concurring in part, dissenting in part.
I agree with much of the majority's analysis. However, I dissent from that portion of the opinion addressing the admission of evidence related to the fault of parties not before the court. As explained in the discussion of the majority, several defendants were released through summary judgment prior to trial. Although aware of the dismissals, the trial court was confronted with Article 2323, which provides:
A. In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.

*576 B. The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.
C. Notwithstanding the provisions of Paragraph A and B, if a person suffers injury, death, or loss as a result partly of his own negligence and partly as a result of the fault of an intentional tortfeasor, his claim for recovery of damages shall not be reduced.
Based on my appreciation of the above language, I find no error in the trial court's determination to permit evidence as to nonparty actors. Specifically, Section A requires that the fault "of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty ...." (Emphasis added.) Importantly, the article goes on to include apportionment of fault even if recovery is impossible due to insolvency, immunity, or lack of knowledge of the actor's identity. Id. Thus, the lack of status as a party, alone, is insufficient to preclude apportionment of fault to an actor.
Neither do I conclude that it is necessarily problematic that the most likely nonparty actors were those dismissed by summary judgment. The summary judgments granted involved whether any liability of these third party defendants could be proven. The reviewing courts determined that, based on the submissions in support of and in opposition to the motions for summary judgment, imposition of liability must fail. Inspection of Article 2323, however, indicates that it is the "degree or percentage of fault" that is to be apportioned. (Emphasis added.) As can be seen from Section B, it is clear that the ability or inability to recover from an actor at fault is irrelevant to the Article 2323 inquiry. Accordingly, the defendants are left with the ability to demonstrate fault, if they can, of another party under Article 2323. Indeed, that article requires consideration of the fault of all persons causing or contributing to the injury regardless of whether the person is a party or nonparty. Similarly, the plaintiff maintains the opportunity to introduce her own evidence in an attempt to demonstrate that those actors remaining as parties share the entirety of the fault.
Due to this appreciation of Article 2323, I respectfully dissent from that portion of the majority opinion reapportioning fault. In all other respects, I concur.
NOTES
[1] Northern Insurance Company eventually tendered the limits of its policy in an agreement that will be discussed below.
[2] The third-party defendants related to an allegation that the brakes were rendered defective due to faulty parts or repair on the truck involved.
[3] The alternative motion for new trial filed by the plaintiff was granted conditionally.
[4] We point out that the plaintiff did not argue that the general damage award was inadequate. Therefore, we do not reach the issue of whether the court's award might actually be inadequate given Ms. Bowie's condition.
[5] See Duncan v. Kansas City Southern Railway Co., 00-66 (La.10/30/00); 773 So.2d 670, wherein the Louisiana Supreme Court considered the lowest life expectancy figure in the record in calculating future medical expenses.