# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 03-1557

### HOWARD MCCORMICK, ET AL.

### VERSUS

### ALLSTATE INSURANCE COMPANY AND AMY ROMERO

**********

APPEAL FROM THE
PINEVILLE CITY COURT
PARISH OF RAPIDES, NO. 2-0210
HONORABLE PHILLIP TERRELL, JR., CITY COURT JUDGE

**********

**MARC T. AMY**
**JUDGE**

**********

Court composed of Jimmie C. Peters, Marc T. Amy, and Elizabeth A. Pickett, Judges.

**AFFIRMED.**

**Michael T. Johnson**
**Johnson & Siebeneicher, Inc.**
**Post Office Box 648**
**Alexandria, LA 71309**
**(318) 484-3911**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **Allstate Insurance Company**
    **Amy Romero**

**Richard A. Rozanski**
**Wheelis & Rozanski**
**Post Office Box 13199**
**Alexandria, LA 71315-3199**
**(318) 445-5600**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **Allstate Insurance Company**

**Kenneth A. Doggett**
**Post Office Box 13498**
**Alexandria, LA   71315-3498**
**(318) 487-4251**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
**Howard McCormick**
**Jennifer McCormick**

AMY, Judge.

The instant appeal arose from an automobile accident that occurred in a parking lot. The plaintiffs, claiming that they were injured as a result of the collision, filed suit against the driver of the automobile that struck them and against her insurer, seeking medical expenses and property and general damages. The defendants answered, arguing that the plaintiffs were partially at fault in the accident. After a bench trial, the trial judge determined that the defendant driver was solely responsible for the accident and awarded the plaintiffs medical expenses and property and general damages, accordingly. From this judgment, the defendants appealed suspensively. For the following reasons, we affirm.

**Factual and Procedural Background**

The accident from which the instant matter arose occurred between six o'clock and six-thirty on the evening of November 16, 2001, in Pineville, Louisiana. According to the record, after finishing dinner at Ryan's, fifteen-year-old Jennifer McCormick and her father, Howard, walked to their car, which was in a parking lot shared between the restaurant and the nearby Wal-Mart. The record further indicates that Amy Romero and her then-boyfriend, Donald Johnson, had finished eating at Ryan's at approximately the same time as the McCormicks. The record reflects that as she was exiting the parking lot, and as the McCormicks were pulling out of their parking space, Ms. Romero hit the McCormicks' vehicle, damaging the right fender. The collision also damaged the left front portion of Ms. Romero's vehicle. The events leading up to the accident formed the center of the controversy at trial and remain in dispute on appeal.

Howard McCormick testified at trial that after he and his daughter finished eating at Ryan's, they decided to get gasoline at the nearby Wal-Mart. He noted that

his daughter had received a learner's permit shortly before the date of the accident, and she had asked to drive to the gas station. According to his recollection, after his daughter had pulled out of the parking space by five or six feet, Mr. McCormick saw that the defendant, Amy Romero, was driving towards them at a "fairly fast" rate of speed, talking on her cellphone. Mr. McCormick stated that his daughter stopped the car when she saw Ms. Romero coming.

On cross-examination, counsel for the defendants used Mr. McCormick's deposition, in which he stated that he and his daughter had not moved from their parking space when Ms. Romero hit them, to impeach his trial testimony. In response, Mr. McCormick maintained that as of trial, he recalled that they had moved five or six feet out of the parking space when the collision occurred. Defense counsel further pointed out that in Mr. McCormick's deposition, he said that he did not see Ms. Romero's car until immediately before the accident; at trial, however, he said that he saw her car from between thirty to fifty feet away. Mr. McCormick explained that he is not a good judge of distances in terms of feet and that the inconsistencies in his testimony could be a result of his age.

Miss McCormick likewise testified as to her recollection of the accident at trial. She indicated that although she had not turned on her headlights after starting the car and moving out of the parking space, the parking-lot lights were on, which were "very bright;" as such, her vision was not impaired. She recalled that after she started the car and moved approximately one-third out of her parking space, she saw Ms. Romero coming up the traveling lane, and she stopped to let her pass, explaining that she did not have time to back up. She posited that Ms. Romero could have maneuvered around her using the empty parking spaces across from the McCormicks' vehicle. Ms.

McCormick also testified that Ms. Romero was talking on the cellphone while driving and was looking down towards the floor of her vehicle.

On cross-examination, Miss McCormick indicated that although a truck was parked to her right, the direction from which Ms. Romero approached, the truck had not kept her from seeing Ms. Romero. Miss McCormick indicated that she pulled up past the truck in order to see around it, but she stopped to let Ms. Romero pass because Ms. Romero had the right-of-way. Miss McCormick indicated that the collision did not happen immediately thereafter; instead, there was a delay of "a couple seconds."

Ms. Romero testified that she was driving down the traveling lane of the parking lot when the McCormicks pulled out of a space before she could go around them. She testified that she had her headlights on.

Ms. Romero's ex-boyfriend stated at trial that he was a passenger in Ms. Romero's car when the accident occurred, at which time she was talking on her cellphone. Ms. Romero later denied this statement in her testimony, claiming that her ex-boyfriend was on her cellphone at the time of the accident because his mother had called about a medical emergency in the family. Ms. Romero indicated that she and her boyfriend broke up sometime after the accident and that she has a restraining order against him.

Mr. McCormick filed suit against Amy Romero and her insurer, Allstate, individually and on behalf of Jennifer, his minor daughter, on April 22, 2002, asserting damage to his vehicle and seeking medical expenses and general damages. The matter proceeded to trial on May 28, 2003. The trial judge issued written reasons for judgment on July 18, 2003, finding that Ms. Romero was solely at fault in the accident. The trial judge further awarded Jennifer and Howard McCormick medical

3

expenses in the amounts of $1041 and $1356, respectively, and general damages in the amounts of $12,000 and $9,000, respectively. In addition, Howard McCormick was awarded $2,445.39 in property damages.

Allstate and Amy Romero perfected a suspensive appeal. They now assert the following assignments of error:

1. The trial court erred in finding Allstate's insured, Amy Romero, one-hundred percent at fault for the accident, and

2. The trial court erred in assessing general damages in the amounts of $9,000.00 and $12,000.00 for Howard McCormick and Jennifer McCormick, respectively.

**Discussion**

Louisiana Civil Code Article 2315[1] provides a basis for recovery by persons who suffer damages as a result of the acts of another. In the instant appeal, the defendants wish to revisit the issue of tort liability according to notions of comparative fault, claiming that the McCormicks were partially to blame for the accident. Comparative fault is outlined in La.Civ.Code art. 2323 as follows:

A. In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the

---

[1]Louisiana Civil Code Article 2315 provides as follows:
A. Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
B. Damages may include loss of consortium, service, and society, and shall be recoverable by the same respective categories of persons who would have had a cause of action for wrongful death of an injured person. Damages do not include costs for future medical treatment, services, surveillance, or procedures of any kind unless such treatment, services, surveillance, or procedures are directly related to a manifest physical or mental injury or disease. Damages shall include any sales taxes paid by the owner on the repair or replacement of the property damaged.

degree or percentage of negligence attributable to the person suffering the injury, death, or loss.

B.  The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.

C.  Notwithstanding the provisions of Paragraphs A and B, if a person suffers injury, death, or loss as a result partly of his own negligence and partly as a result of the fault of an intentional tortfeasor, his claim for recovery of damages shall not be reduced.

In the leading case of *Watson v. State Farm Fire and Casualty Insurance Co.*, 469 So.2d 967, 974 (La.1985), the Louisiana Supreme Court provided the following five factors for trial courts' consideration in allocating percentages of fault among parties to a suit:

1) whether the conduct resulted from inadvertence or involves an awareness of danger; 2) how great a risk was created by the conduct; 3) the significance of what was sought by the conduct; 4) the capacities of the actor, whether superior or inferior; and, 5) any extenuating circumstances which might require the actor to proceed in haste without proper thought.

On appeal, the trial court's apportionment of fault is reviewed pursuant to the manifest-error/clearly-wrong standard. *Cleland v. City of Lake Charles*, 02-805 (La.App. 3 Cir. 3/5/03), 840 So.2d 686, *writ denied*, 03-1380, 03-1385 (La. 9/19/03), 853 So.2d 644, 645.

As noted above, the McCormicks testified at trial that Amy Romero was talking on a cellphone and was not looking down the traveling lane of the parking lot just before she collided with their stopped vehicle. Miss McCormick stated that she had not entirely pulled out of their parking space before stopping the vehicle; instead, she pulled out enough to see around a truck that was parked nearby. In addition, Miss McCormick testified that Ms. Romero could have avoided their vehicle by going around it, as the parking spaces across from them were unoccupied. Ms. Romero,

5

however, claimed that she did not have enough time to avoid hitting the McCormicks' car.

In *Louisiana Farm Bureau Mutual Insurance Co. v. Regal Insurance Co.*, 01-1446, p. 2 (La.App. 3 Cir. 3/6/02), 809 So.2d 1280, 1282, a panel of this court described the deference owed to the credibility determinations and findings of fact made by trial courts, within the context of allocation of fault, as follows:

> Even though an appellate court may feel its own evaluations and inferences are more reasonable than those of the fact-finder, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *Rosell v. ESCO*, 549 So.2d 840 (La.1989); *Arceneaux v. Domingue*, 365 So.2d 1330 (La.1978). An appellate court should not substitute its opinion for the conclusions made by the trial court, which is in a unique position to see and hear the witnesses as they testify. *In re A.J.F. Applying for Private Adoption*, 00-0948 (La.6/30/00), 764 So.2d 47. The trier of fact is not disadvantaged by the review of a cold record and is in a superior position to observe the nuances of demeanor evidence not revealed in a record. *Leal* [*v. Dubois*, 00-1285 (La. 10/13/00)], 769 So.2d 1182; *Adkins v. Huckabay*, 99-3605 (La.2/25/00); 755 So.2d 206.

When we review the trial court's findings of fact pursuant to the standard of review set forth in *Cleland*, above, and with deference to its credibility determinations pursuant to *Louisiana Farm Bureau*, we find that the trial court was neither manifestly erroneous nor clearly wrong in finding Ms. Romero to be solely at fault in the accident at issue. The trial judge determined that the McCormicks' explanation of the accident was more credible than was Ms. Romero's and that Ms. Romero was solely responsible. The record supports such a conclusion. This assignment is without merit.

*General Damages*

In reviewing an award for general damages, an appellate court must determine whether the factfinder abused its discretion. *Lavergne v. America's Pizza Company, LLC*, 02-889 (La.App. 3 Cir. 2/5/03), 838 So.2d 845. Whether an award is adequate or inadequate "should be determined by the facts or circumstances particular to the case under consideration." *Id.* at 849 (quoting *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1260 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059 (1994).) An appellate court should raise or lower an award that it has determined to be clearly erroneous to the highest or lowest point reasonably within the trial court's discretion. *Bowie v. Young*, 01-175 (La.App. 3 Cir. 3/20/02), 813 So.2d 562, *writ denied*, 02-1079 (La. 6/21/02), 819 So.2d 335.

Mr. McCormick testified at trial that he had been injured in the accident but that he had initially attempted to treat his pain with over-the-counter medications, such as Tylenol. He commented that this was not very effective, so he consulted his family doctor, who, in turn, instructed him to see a chiropractor. Mr. McCormick explained that he began seeing Dr. Kelly Faircloth, chiropractor, approximately a month after the accident. Dr. Faircloth's deposition, admitted into evidence by the plaintiffs, indicated that Mr. McCormick complained of lower-back pain that radiated into his left hip and leg. Her initial diagnosis was traumatic lumbosacral sprain with associated radiculitis and muscle spasms, complicated by osteoarthritis. She opined that these injuries were consistent with the accident.

Dr. Faircloth performed intersegmental traction, diathermy, and manipulation in an effort to allay Mr. McCormick's pain. According to the record, Mr. McCormick visited Dr. Faircloth twenty-three times between his initial visit and the end of March 2002, when he was released, at a cost of $1,356. In addition, the record further

7

reflects that Mr. McCormick was ninety-three years old at the time of trial, and, during his testimony, he noted that his injuries had kept him from gardening, which was one of his hobbies. In addition to medical expenses, the trial judge awarded Mr. McCormick general damages of $9,000.00.

Miss McCormick indicated that as a result of the accident, she experienced pain in her lower back. Like her father, she took over-the-counter pain relievers and found that they were ineffective. She testified that she, too, began treatment with Dr. Faircloth in January 2002. The record reflects that she visited Dr. Faircloth seventeen times before her last treatment in early March 2002. Dr. Faircloth's deposition indicated that Miss McCormick complained of lower-back pain and pain in her left elbow that radiated into her forearm. She was diagnosed with traumatic lumbosacral sprain with associated muscle spasms, which Dr. Faircloth indicated were injuries consistent with the accident. Like her father, Miss McCormick received treatments of intersegmental traction, manipulation, and diathermy, at a total cost of $1,041. Miss McCormick testified that she was not allowed to participate in physical education at school but that her hobbies were otherwise unaffected by her injuries. In addition to medical expenses, the trial judge awarded Miss McCormick general damages in the amount of $12,000.00.

We find that, based upon the plaintiffs' testimony and the medical evidence adduced at trial, the trial judge did not abuse his discretion in awarding Howard McCormick general damages of $9,000.00 and Jennifer McCormick general damages of $12,000.00. This assignment lacks merit.

## DECREE

For the foregoing reasons, the ruling of the trial court is affirmed. All costs of this proceeding are assigned to the defendants, Amy Romero and Allstate Insurance Company.

**AFFIRMED.**

9